**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAFFAELLA MARIE  SPONE | : |
| 104 Tartan Terrace | : |
| Chalfont, PA 18914 | :CIVIL ACTION |
| PLAINTIFF | : |
| v. | : |
| MATTHEW J.  REISS | : |
| 1034 Ziegler Road | : |
| Palm, PA 18070 | : |
| and | : NO. |
| LOUIS BELL | : |
| 13 West Creamery Road | : |
| Hilltown, PA 18927 | : |
| and | : |
| HILLTOWN TOWNSHIP | :   JURY TRIAL DEMANDED |
| 13 West Creamery Road | : |
| Hilltown, PA 18927 | : |
| and | : |
| SHERRI RATEL and | : |
| KAYLA RATEL | : |
| 5616 Stump Road | : |
| Pipersville, PA 18947 | : |
| and | : |
| JENNIFER HIME and | : |
| MADELINE HIME | : |
| 124 Misty Meadow | : |
| Perkasie, PA 18944 | : |
| and | : |
| MATTHEW WEINTRAUB | : |
| 100 N. Main Street | : |
| Doylestown, PA 18901 | : |
| and | : |
| THE COUNTY OF BUCKS | : |
| 50 North Main Street, 1st Floor, | : |
| Doylestown, Pa. 18901 | : |
| DEFENDANTS | : |

## **COMPLAINT**

### I.    INTRODUCTION

In a case that has sadly became a national media circus due to the malicious, wanton and

irresponsible actions of Matthew Reiss, a now former police officer, and Matthew Weintraub

along with the other defendants, the Plaintiff has become a national news figure who has been ridiculed, threatened, mocked, badgered, berated, called a child predator, criminal mastermind, and compared to Wanda Holloway, who was convicted of attempting to hire a hitman to kill the mother of her daughter's junior high school cheerleading rival.

Reiss , along with Bell, charged Plaintiff with cyberharassment of minors and claimed without a shred of proof that Plaintiff made deepfake videos in addition to sending death threats and nude images to minors to get them kicked off a cheerleading team.  After Reiss filed a criminal complaint against the Plaintiff containing these false and outlandish accusations, the Bucks County District Attorney Matthew Weintraub then immediately called a press conference and repeated these entirely false statements about Plaintiff.  Weintraub did not stop there, however.  Weintraub continued his press tours on news programs such as *Good Morning America* and the *Today Show*, and told the nation "without question" that the Plaintiff used deepfake technology to target certain minors, made nudes of them, and directly texted them messages that said "you should kill yourself".  Weintraub purposefully gave the press the Plaintiff's home address and emailed the press the criminal complaint containing the false deepfake allegations, even though Plaintiff had a minor daughter, in order to bring down the press on her.

Incredibly, after Plaintiff's arrest, Montgomery County detectives seized numerous child pornography and chats on Reiss' possession, including evidence that one of the minors was herself making nudes and selling them on Tinder with her mother's knowledge.  Reiss also had the personal passwords to the minor's social media accounts.  However, Reiss was never removed from Plaintiff's case.   It was later discovered that there was no investigation of any of the minors' phones to determine where any of the alleged nudes, deepfakes or "doctored social

media" originated.  When police finally decided to obtain the minor's phone and her mother's phone a year after Plaintiff's arrest,  it was discovered that police allowed the original phones to be destroyed.  It was discovered when Weintraub's office after repeated requests to examine what evidence they had of cyberharassment, that it was one of the minors that was selling the nude images of herself, and her mother passed it off as everyone was doing it.  Moreover, the mother admitted in communications with another mother that she had destroyed evidence and was willing to pay someone to come up with evidence against Plaintiff.  Knowing this, Weintraub and the police still accused Plaintiff publicly of the cyberharrasment that involved deepfaking the videos, making nudes and sending threats.

Despite the press covering Plaintiff's trial and the crimes of deepfakes, Weintraub's office and the police allowed the false accusations to continue to the day of Plaintiff's trial in March of 2022, knowing that it had no evidence. Weintraub's office and Bell then threatened Plaintiff on the day of her trial that if she mounted a defense to the charges, that they would find other evidence and prosecute her further.   In a continuing pattern of intentional defamation to continue to falsely paint Plaintiff as a child predator, Weintraub has on his webpage *to this day* the press conference containing the false and defamatory statements about Plaintiff, and still has the link posted to the criminal complaint that contain the false charges of deepfakes, nudes and death threats.  Further, Madeline Hime and Kayla Ratel, who are not minors, continued to ridicule and post on social media falsely that Plaintiff has "stalked" and cyberbullied them. Hime further continues to publicly state that Plaintiff deepfaked a video of her vaping, even though no such evidence existed and was shown to be a genuine video by an expert technology company.

## II.    FACTUAL BACKGROUND

### A.    THE PARTIES AND VENUE

1.    Plaintiff Raffaella Plaintiff ("Plaintiff") is an adult individual who resides at 104 Tartan Terrace, Chalfont, PA 18914

2.    Matthew Reiss ("Reiss") is an adult individual who resides at 1034 Ziegler Road, Palm, PA 18070.

3.    Louis Bell ("Bell") is currently employed as a police officer with the Hilltown Township Police at 13 West Creamery Road, Hilltown, PA 18927

4.    Reiss and Bell were at all material times officers with the Hilltown Township Police Department, and are being sued in their individual and official capacities as an officer, agent, and/or employee of the defendant, Hilltown Township.

5.    Hilltown Township all times relevant herein was a political subdivision organized and existing under the Pennsylvania Second Class Township Code, 53 P.S. §§ 65101 et seq., with offices at 13 W Creamery Rd, Hilltown Township, PA 18927

6.    At all material times, Reiss and Bell acted within the course and scope of their employment, under color of state law and pursuant to the customs, policies and practices the defendant, Hilltown Township.

7.    At all material times, defendant, Hilltown Township was charged with the responsibility of testing, hiring, training and supervising members of the Police Department including in particular Reiss and Bell.

8.    Madeline Hime ("Hime") is an adult who resides with her mother Jennifer Hime ("Jennifer Hime") at 124 Misty Meadow, Perkasie, PA.

9.    At the time Plaintiff was accused of cyberbullying Hime, she was a minor.

10.    Kayla Ratel ("Ratel"), is and was an adult and resides with her mother Sherri Ratel ("Sherri Ratel") at 5616 Stump Road, Pipersville, PA 18947.

11.    Matthew Weintraub is the District Attorney of Bucks County, and is responsible, solely or in concert with the other defendants, responsible for the false and defamatory statements giving rise to this action. Weintraub  is being sued in his individual and official capacities.

12.    The County of Bucks ("Bucks") is a county government entity located in the Commonwealth of Pennsylvania with an address of 50 North Main Street, 1st Floor, Doylestown, Pa. 18901, and c/o Solicitor's Office, 55 East Court Street, Doylestown, PA 18901,which is located in this judicial district. Defendant employs more than 50 people.

13.    At all material times,  Weintraub was acting as agent, servant and/or employee of Bucks County under the County's control or right to control.

14.    At all times material hereto, Reiss, Bell and Weintraub were acting in concert with one or all of the defendants and during the course of their employment under color of state law.

15.    At all times material hereto, Reiss, Bell and Weintraub were acting intentionally, maliciously and in concert with one another in reckless and deliberate disregard for Plaintiff's federal and state constitutional rights.

16.    At all times material hereto, Hilltown Township and Bucks County acted or failed to act through Reiss and Weintraub, and who were deliberately indifferent to the violations of Plaintiff's federal and state constitutional rights.

17.     Jurisdiction over the parties in the Eastern District of Pennsylvania is proper pursuant to the provisions of 28 U.S.C. § 1220, 28 U.S.C. §1331 and 28 U.S.C. § 1343.

18.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b)(1) and (2),

### B.     PLAINTIFF IS ACCUSED OF CYBERHARASSMENT

19.     Jennifer Hime contacted Hilltown Police, the exact date unknown, and told Reiss that Plaintiff had altered a video of her daughter vaping and that the video was faked.  In addition, Jennifer Hime claimed that her daughter had received direct messages that included pictures from Hime's social media accounts such as Tik Tok which had been doctored to make her look as if she was naked, drinking alcohol or vaping,[1] and that her daughter received texts and voice messages that stated that Hime should kill herself.

20.     At the time, Hime was a minor.

21.     Similarly, Jennifer Hime, who told police that she was acting for Ratel and who was not a minor at the time of the alleged incidents, told Reiss that someone had sent Ratel similar altered images of Ratel in bikinis, with the message saying that Ratel was drinking and smoking, and that Ratel's Tik Tok account had been altered to say "attentionwhOre69".

22.     When Jennifer Hime made this complaint, the police never requested to see any of the phones of Hime or Ratel to verify these accusations, but simply took Jennifer Hime's word. The police also never demanded that the phone or any evidence therein be preserved.

23.     Acting on Jennifer Hime's statements, Reiss signed an Affidavit of Probable Cause in order to obtain a search warrant against Plaintiff.

_____

[1] NBC10 Philadelphia, Rudy Chincilla 3/15/2021

24.    In the Affidavit cause, Reiss swore that Plaintiff had communicated directly with

the minors[2] and *inter alia*:

    a.  Directly sent Hime texts and voice messages that said "you should kill yourself";

    b.  That Hime's social media accounts were "doctored to make it appear that she was

        "nude, drinking alcohol or vaping";

    c.  That Plaintiff doctored a video showing Hime vaping using "deepfakes"

25.    In the Affidavit, Reiss swore under penalties of perjury that the above evidence

was true and correct. Bell also participated in the preparation of the affidavit including these

false statements.

26.    On December 18, 2020, Reiss and Bell seized every electronic device from

Plaintiff's home, including her Iphone 8 which Reiss and Bell claimed was used to make the

deepfakes.

27.    Without viewing any of the minors' phones to verify that they received text and

voice messages or so-called nudes, Reiss and Bell then repeated the same accusations almost

verbatim in the Affidavit of Probable Cause used to obtain an arrest warrant for Plaintiff.

28.    Similar to Hime, Reiss never spoke to Ratel. The so-called "evidence" was

filtered to him by Jennifer Hime.

29.    Reiss filed a Criminal Complaint against Plaintiff.

30.    The Complaint charged Plaintiff, *inter alia,* with three counts of Cyber

Harassment of a Child, 18 Pa. C.S.A. 2709 (a.1)1(i) for sending the altered videos, nudes and

death threats directly to Hime and Ratel while they were minors.

---

[2] Kayla was not a minor.

### C.    WEINTRAUB'S PRESS TOUR

31.    Following Plaintiff's arrest, Weintraub, who was up for reelection, held a press conference at the Bucks County Courthouse during which he thanked the press for coming on an "impromptu fashion",  intentionally calling every major news source for the opportunity of a photo op and the scoop on the story of a 50 year old woman who was using deepfake technology on her Iphone 8.

32.    At the beginning of the press conference, Weintraub, knowing that Plaintiff had a minor daughter[3], proceeded to tell the press that he was going to email the press the criminal complaint that listed Plaintiff's home address and then proceeded to link Plaintiff's criminal complaint with the false and defamatory statements to his webpage.  Weintraub then told the press Plaintiff's specific home address during the new conference.[4]

33.    Weintraub obviously had no concern for Plaintiff's minor daughter or for the veracity of the accusations.  Subsequent to the press conference, news stations such as Fox 29 and 69 News banged on Plaintiff's door with full camera crew. Plaintiff then began receiving threats posted on social media some of which threatened bodily harm to Plaintiff.

34.    During his press conference, Weintraub made the following matter of fact statements:

- That at the time of their "victimization", the alleged victims were all minors[5], when they were not[6]

---

[3] Press Conference March 15, 2021  :59
[4] Press Conference 5:58
[5] "the victims . . . were all minors . . . at the time of their victimization." Bucks County District Attorney, Bucks County DA Holds News Conference in Cyberbullying Case, YouTube (Mar. 15, 2021), https://www.youtube.com/watch?v=-AUW-nKWKu0&t=20s
[6] Press Conference 1:10. During his press conference, Weintraub asserted, "the victims . . . were all minors . . . at the time of their victimization." Bucks County District Attorney, Bucks County DA Holds News Conference in Cyberbullying Case, YouTube (Mar. 15, 2021), https://www.youtube.com/watch?v=-AUW-nKWKu0&t=20s.

- That Jennifer Hime said her daughter received phone calls and texts that told Hime "you should kill yourself"[7]  Weintraub specifically emphasized that this was in quotes, ***stating it as a matter of fact***

- That photos were taken from Hime's own social media and were edited by Plaintiff to make it appear that Hime was drinking, vaping and that a bathing suit that she was wearing was edited and replaced with a skin tone color in order to make Hime appear nude[8]

- That in Ratel's case, that Plaintiff altered Ratel's social media screen name to "attentionwhOre69"[9]

- Weintraub stated that all of "these", obviously referring to the postings by these alleged victims on their own social media accounts, were "deepfakes"[10]

35.     Weintraub claimed the police viewed the video of Hime vaping or appearing to vape and other photographs "and found them to be what we now know to be deepfakes." *Id.* at 4:10. He further referenced the messages alerting Ratel's parents to her Tik Tok account name, drinking and smoking, calling "none of this . . . accurate or material, frankly. Weintraub said they were all altered and shown and seen as deepfakes." *Id.* at 5:09.

36.     Weintraub specifically told the press that:

> This tech is now available to anyone with a smart phone. Your neighbor down the street, somebody who holds a grudge. We just have no way of knowing. This is prevalent. This is also… and this is one of my preeminent concerns…this is also another way for an adult to prey on children, as is the case of the allegations in this instance…. This is…the first incident…where we have an adult with specific intent, preying on juveniles through the use of this deepfake technology.

---

[7] Press Conference 3:21
[8] Press Conference 3:45
[9] Press Conference 5:16
[10] Press Conference 5:26

Press Conference at 6:29.

Weintraub then continued to express concerns about the speed of technology and that law enforcement is "bound and constrained" by the law, which inhibits their ability to keep up with criminal activity. Id. In response to a question about the effect on the victims of the "pretty vicious . . . cyberbullying," he expressed that, "People feel very safe in their space, and now people's space includes cyberspace. As this example very starkly points out to us, we're not safe in cyberspace. Anybody can grab any image that we put out there. They can manipulate it to look unseemly . . . ." Press Conference at 13:01. Weintraub then explained that the police were able to "look behind the curtain" and "connect the dots" to determine the videos and images were fake. Press Conference at 16:07.

37.    When he made these statements to the press, it was discovered right before Plaintiff's trial, and after repeated threats from Plaintiff for Weintraub to produce evidence of the cyberharassment charges,  that the police or Weintrabu had not done the investigation that he had told the press.  Rather,  the police and Weintraub knew that there was no such evidence and further allowed Hime's phone to be destroyed so that Plaintiff's expert could not examine the evidence.

38.    Following his initial press conference, Weintraub then appeared on news outlets such as *Good Morning America* and specifically stated on national news that the "deepfake video" of Hime vaping was done by Plaintiff in an effort to get them "knocked off" a cheerleading team. On *Fox News*, Weintraub incomprehensibly claimed that "we take it as gospel that a picture is a picture and a video is a video", again referring to Plaintiff deepfaking the vaping video of Hime.  Weintraub further asserted that pictures of the minors were altered.

39.     Weintraub, by smugly, falsely, and arrogantly claiming on the news and to the newspapers that Plaintiff was preying on juveniles through the use of this deepfake technology, caused the *Today Show* to state on National News that the community demanded justice against Plaintiff.

40.     Weintraub further made press statements such as the below to 3CBS:

> "Our allegation is that [Plaintiff] took existing images from existing social media — from these three victims' existing social media accounts — and manipulated them," District Attorney Matt Weintraub said.[11]

41.     Weintraub stated to the press that it was Plaintiff's intent to "slut shame" these minors.

42.     Weintraub's false claims to the press included:

a.    that Plaintiff was arrested as the result of a very thorough and lengthy investigation. Press Conference, at 1:45.

b.    Weintraub said that Plaintiff via texts or calls directly to the victims told them "you should kill yourselves" (*Id*. at 3:26). This never occurred.

c.    That Plaintiff took photos from Hime's social media accounts and modified them to show her drinking, vaping, and nude with a bathing suit edited out and replaced with skin tone but "no genitalia showing"; that police reviewed the images and found them to be "deep fakes" "by looking behind the curtain" and using metadata; that Plaintiff captured pictures of the three victims and provided them with offensive labels including falsely stating Kayla was using "AttentionWhore69" as a screen name"; and, that a search warrant at Plaintiff's

---

[11] https://philadelphia.cbslocal.com/2021/03/15/raffaela-Plaintiff-of-bucks-county-accused-of-cyberbullying-making-deepfakes-of-3-teen-cheerleaders/

home determined that she used her call phone to manipulate media and create the

"deep fakes," which is the crux of this case." Press Conference at 3:26-6:10.


43.    None of above was true, as noted by the Trial Court when it stated that although

one witness maintained those things were true, the District Attorney had withdrawn or retracted

those allegations. Weintraub made these public statements to make it look like Plaintiff was

clearly guilty.

44.    In fact, Jennifer Hime testified that the "androgynous nude" photo that she and

Weintraub told the press was done by Plaintiff was actually sent to her daughter by someone

Hime knew – not by Plaintiff.

45.    Numerous witnesses, including Kayla herself ,testified that her screenname was

actually attentionwhOre69 (rather than something made up by Plaintiff to slander her).

46.    Weintraub's false statements caused a national media circus about deepfake

technology against Plaintiff.  Beginning on March 12, 2021, numerous articles were published in

local, national, and international news. See, e.g., Vinny Vella, A Bucks County Woman Created

'Deepfake' Videos To Harass Rivals on Her Daughter's Cheerleading Squad, DA Says,

Philadelphia Inquirer, Mar. 12, 2021; Elizabeth Elizalde, PA Mom Sent Deepfakes of Daughter's

Cheerleading Rivals to Coaches: DA, NY Post, Mar. 13, 2021; Christina Morales, Pennsylvania

Woman Accused of Using Deepfake Technology To Harass Cheerleaders, NY Times, Mar. 14,

2021; Megan Sheets & Andrew Court, Cheerleader, 17, Reveals 'Deepfake' Smear Video That

Rival's Mother Made of Her Vaping and Says She Feared No One Would Believe It Wasn't

Real: Woman, 50, Arrested for 'Cyber Harassment', DailyMail.com, Mar. 15, 2021. Bucks

County's own District Attorney News posted its own story on May 14, 2021, after Appellant's

preliminary hearing. <u>Chalfont Woman Ordered To Face Trial for Cyber Harassing Three Teens on Daughter's Cheer Squad</u>, District Attorney News (May 14, 2021), https://www.buckscounty.gov/CivicAlerts.aspx?AID=48. This was posted even though the District Attorney knew by the preliminary hearing that police had been unable to confirm any of the videos were falsified. <u>See</u> Christopher Dornblaser, <u>DA: 'Deepfake' Technology Might Not Have Been Used in Bucks Cheerleading Harassment Case</u>, Bucks County Courier Times (May 14, 2021), <u>https://www.buckscountycouriertimes.com/story/news/2021/05/14/da-chalfont-woman-may-not-have-used-deepfake-tech-harassment-vipers-cheerleading/4992798001/</u>.

47.     Media coverage continued against Plaintiff even as the trial began in 2022. <u>See, e.g.</u>, Kate Fishman, <u>Harassment Trial Begins For Bucks County Cheer Mom</u>, Patch, Mar. 23, 2022. A trailer for a movie inspired by the District Attorney's unfounded deepfake allegations was released at the time of trial. <u>See</u> TooFab Staff, <u>First Trailer for Deadly Cheer Mom: Deep Fakes & Blackmail Threaten Mena Suvari's Daughter (Exclusive)</u>, TooFab (Mar. 22, 2022), https://t.ly/HdsO.

48.     Not once did Weintraub ever correct or even retract the false cyberharassment charges and continued to press them to the day of trial in 2022, and used them to further his campaign bid to secure his reelection as district attorney.

49.     Weintraub also knew that Hilltown police had done an inadequate investigation into the cyberharassment and overstepped his bounds as the District Attorney.  Knowing that Reiss was compromised and disgraced, no investigation was done into where the nudes came from or why Reiss had Hime's personal passwords to her social media accounts.  No investigation was done as to why the police allowed Hime to dispose of her phone.

50.     Weintraub also knew from his own County Detective who admitted to Plaintiff right before Plaintiff's trial that there was no evidence of deepfake technology. Yet, Weintraub continued his false narrative to the press.

51.     In such cases, it is common practice and custom for a District Attorney to obtain a complete and thorough investigation.

52.     Instead, Weintraub relied on Reiss, a disgraced cop under investigation for child pornography to obtain an arrest warrant for Plaintiff for cyberharassment with essentially no investigation and no training in deepfake technology.  In every sense, Weintraub relied upon his faulty investigation to recklessly pursue false cyberharassment charges against Plaintiff for his political gain.

53.     Weintraub made these false claims to the press which endangered Plaintiff's life and violated Weintraub's  oaths as an attorney, a prosecutor, and District Attorney, all for selfish political gain.

54.     Weintraub's false and defamatory statements made in press conferences and in furtherance of his political ambitions outlined herein constitute clear violations of his oath of office; Weintraub's actions in condemning Plaintiff as someone who "preys" on children, who makes nudes of them, who alters social media accounts of minors, publicly without cause and making false accusations of wrongdoing as outlined herein constitute clear violations of his oath of office.

55.     At the press conference and then in television interviews, Weintraub exceeded the duties of an elected district attorney by making improper statements concerning evidence, made false statements concerning evidence which he knew, should have known, or through reasonable

effort would have known were false, and provided a public forum to defame the Plaintiff, portray her in a false light, and damage her personal and professional reputation.

56.     Indeed, Pennsylvania Rule of Professional Conduct 3.6(a) provides that "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

57.     Weintraub's actions at the press conference and in press statements did not serve any legitimate purpose consistent with his sworn duties as the elected district attorney, did not advance the criminal case against Plaintiff *except in the press*, and were perpetrated with actual malice in a brazen, bold, and desperate effort to advance his political career, as he sought reelection.

58.     Weintraub exceeded the duties of an elected district attorney by making improper statements concerning the evidence, made false statements concerning the evidence which he knew, should have known, or through reasonable effort would have known were false, and provided a public forum for Hime and Ratel, who took to Tik Tok to publicly humiliate and falsely accuse Plaintiff of making fake videos, nudes and threats, and to portray Plaintiff in a false light, and damage her personal and professional reputation.

59.     Weintraub spread  inflammatory, guilt-ridden language across news platforms far and wide to convince as many Bucks County voters and potential jurors of both Plaintiff's presumed guilt in targeting and making deepfakes against minors.

60.     In the week before Plaintiff's trial, news surrounding her case resumed with announcements of a thriller movie titled <u>Deadly Cheer Mom</u> being made inspired by the true

story of Raffaela Spone. <u>See</u> TooFab Staff, <u>supra</u>. Taken together, the national atmosphere fed by Weintraub was hostile and pervasive.

61.     By waiting until the first day of trial to dismiss the cyberharassment charges which Weintraub and the police had known for a year were inapplicable in an effort to obtain a guilty plea, acted with a flagrant abuse of discretion. To combat the inapplicable charges and refute the deepfakes, Plaintiff was forced to hire an unnecessary expert, when she could have been preparing to combat only the harassment charges which were ultimately pursued.

62.     Shockingly, despite the fact that Weintraub ultimately conceded at trial that Plaintiff did not deep fake anything, and that none of the allegations broadcast during the press conference were borne out at trial, Weintraub left the press conference video on the District Attorney's  Youtube site through sentencing, where Plaintiff pointed out to the trial Judge that it was still live. Yet,  even as this suit is being filed, Weintraub's defamatory statements remain live on the his Youtube channel.

### D.    ALL DEFENDANTS CONTINUE TO PRESS THE FALSE STATEMENTS MADE TO THE PRESS AND THEN ADMIT TO DELETING EVIDENCE

63.     Following Weintraub's press tour and the false allegations about the deepfakes, nudes and death threats, Plaintiff gained a national reputation with the news referring to her as "Cheer Mom". Twitch called her a "criminal mastermind".  A simple Google search of Plaintiff produces over 6,000 articles.  This story has appeared, and is continuing to appear, on almost every major news program in America including, Good Morning America, the Today Show, CNN, NBC, ABC, CBS, Fox News, People Magazine, Sports Illustrated, the Philadelphia Inquirer, the New York Times, the Washington Post, Inside Edition, KYW, and international news in the U.K. (BBC), Japan, and Australia.

64.     Similar to Weintraub, Jennifer Hime  and Hime appeared on news programs such as *Good Morning America* and *Inside Edition* and stated that the vaping video was faked.

65.     Hime told 6ABC news that she endured threatening messages for months.  Hime again stated on 6ABC news that the vaping video was faked.[12] Jennifer Hime said she "believed her daughter" knowing that this was false and that she had destroyed and withheld evidence.

66.     Hime spoke to *Sports Illustrated* and stated "she'd  never before vaped, consumed alcohol or posed nude.13  Jennifer Hime also told *Sports Illustrated* that she let her daughter. know  by going to the police that she believed her— and that that she, too, was convinced this was the handiwork of a crafty, frightening cyberbully," referring to Plaintiff.[14]

67.     Demand after demand to Weintraub's office and the police to allow Plaintiff's expert technology company to view Hime's phone was met with radio silence.

68.     Only after threatening Court intervention did Weintraub eventually allow Plaintiff access to the so-called "evidence".

69.     When Plaintiff's expert viewed the phones of Jennifer Hime and Hime, it was discovered that their original phones had been disposed of, and Reiss, Bell and Weintraub knew this at least a year before Plaintiff's trial. They intentionally failed to disclose this to Plaintiff.

70.     Moreover, what was on the phones was not the work of a "crafty cyberbully", but a crafty Jennifer and Madeline Hime.  The phones revealed:

      a.   that not one image of Hime had been altered.

---

[12] Yahoo News, Cheerleader's mom created deepfake videos to allegedly harass her daughter's rivals, 5/3/2021
[13] *Sports Illustrated,* "The Mother of All Deepfakes", May 12, 2021
[14] *Id.*

b.   In email communications between Jennifer Hime and Sheri Ratel, it was admitted that Ratel herself made the so called gingerbread house with "strip club" written over it which they falsely accused Plaintiff of doing

c.   That Hime had a Tinder account, known as "mads956" which is age restricted for 18 and older. At the time when Hime was a minor, and with the police and Weintraub's knowledge, Hime publicly stated that she sells images of herself to "sugardaddies" on Tinder.

d.   That Jennifer Hime had admitted to police long before Plaintiff's trial that it was her daughter making and selling nudes of herself

e.   That Jennifer Hime was buying marijuana for her daughter while claiming on national news that her daughter does not vape

f.   There Hime had posted on her social media account pictures of herself vaping

71.   The withheld evidence further revealed that Jennifer Hime was in negotiations with a film company to produce a film containing the lies about Plaintiff deepfaking videos:

> "I'm also working with another producer who, big surprise, wants to turn the story into a lifetime style movie. He actually was the producer of  A League of their own. He is pitching to some networks tomorrow. That would be more anonymous as it would be based on true events but that would be something that would be financially compensated. Basically we would be paid for the story itself.  We have not been asked to sign anything for that yet."
>
> ***
>
> Dear Jennifer,
>
> On behalf of Free Range Media and Critical Content, attached is a Talent Hold Agreement for you and Madi in connection with the "Untitled Cheerleader Deepfake Project."  Please review when you have a chance and let us know if you have any questions or concerns.  Should everything appear satisfactory, you can sign and return to my attention.  I will arrange for counter signature and return a fully executed copy for your records.

Looking forward to working together.

72.    The withheld evidence showed that Jennifer Hime was coaxing Sherri Ratel to have someone from Victory Vipers to come up with some evidence against Plaintiff and offering the person a gift card.

73.    The police and Weintraub knew that Jennifer Hime had admitted in a text to Sherri Ratel that she had withheld damaging evidence from the "cops" and they never did anything about it and continued to conceal it from Plaintiff.

74.    Plaintiff also discovered that Ratel had posted a Tik Tok where she is laughing while scrolling through headlines about Plaintiff creating deepfakes.

75.    Plaintiff discovered that Hime created a "gofundme" that stated falsely:



76.    Continuing their false internet assault on Plaintiff, Ratel posted a Tik Tok that had Plaintiff's mugshot and screenshots of the internet headlines that Plaintiff created deepfakes.

77.    Hime posted a Tik Tok video where she is laughing and pointing at herself while a news reporter is telling the story of Plaintiff creating deepfake videos and telling them to kill themselves. Hime also posted about how the *Today Show* should pay her for her interview.

78.    In another Tik Tok, Hime stated that she was cyberstalked and harrassed "since April of 2020" referring to Plaintiff

79.    In another Tik Tok post, Hime calls Plaintiff "dumb".

80.    Hime bragged on Tik Tok with the caption "my life's a movie" about being interviewed on *Good Morning America* where she stated that the vaping video was fake.

81.    The Hilltown police and especially Reiss continued to comment and analyze the alleged evidence that Plaintiff made deepfakes to the news media.  For example, in an April 8, 2021, interview written by the *Daily Dot*, a tech newspaper, the police asserted as follows:[15]

> ## A 'deepfake' of a vaping teen is at the center of a harassment case—but what if it's not faked?
>
> Is it a fake deepfake?
>
> Apr 8, 2021, 11:21 am*    Tech    Mikael Tholen

\*\*\*

But the accusation is raising serious questions about law enforcement's understanding of deepfake technology, and the media's willingness to repeat their claims without verification.

When pressed about whether the department had entertained the possibility that the vaping video might not be a deepfake at all, Engelhart stated that he was unsure of whether the terminology used to describe the video had been introduced by the alleged victim or police.

Engelhart went on to claim that investigators had conducted a forensic analysis of the video to determine that it had been manipulated.

---

[15]  This is only an excerpt of the entire article, which has not been attached because it printed the alleged victim's photos.

"The assertion is that that victim was not vaping," Engelhart added. "The assertion is that she [Plaintiff] was able to manipulate that to have it appear that she was vaping."[16]

82.    In the same article, Reiss admitted that he did not know where the original video was or even how Plaintiff deepfaked the video, and thereby admitted that he had not done a "thorough investigation" as lauded by Weintraub.  A simple analysis of the phones and social media accounts of Hime and Ratel would have uncovered the truth before Plaintiff was charged with these crimes.  To cover his ineptitude, Reiss even stated to the press that it was Plaintiff that needed to testify, apparently in an attempt to mislead the public about the burden of proof and the fact that he failed to do an investigation of the alleged victim's devices or social media accounts.

83.    Reiss was attempting to blatantly coerce Plaintiff into explaining how she deepfaked videos, when there was no such evidence, by trying to shame her in the press.

84.    Hilltown Township knew that Reiss had two prior civil rights suits filed against him.  Hilltown Township and the police knew that Reiss was under investigation for collecting child pornography, including images of children under the age of 13 being sexually assaulted.[17]

85.    Weintraub made a statement that all of Reiss' cases would be evaluated but did nothing about the false allegations against Plaintiff.

_____

[16] Source: https://www.dailydot.com/debug/deepfake-vaping-video-cheerleaders/

[17] The investigation received 660 images, which included 10 images that were of child pornography, depicting children under the age of 13 in various stages of undress, in sexual poses and being sexually assaulted," the news release said. "As part of the search warrant, chats were also provided to investigators." "In one chat, the defendant notes that he works for a local government entity," the District Attorney added.  Source:: https://sauconsource.com/2021/05/26/police-dept-angered-shocked-cop-charged-with-child-porn/

86.     After Reiss' arrest for child pornography, Hime posted on Tik Tok "to the man i thought i could trust", referring to Reiss.  The police knew about the posts, yet Reiss was never removed from Plaintiff's case and Weintraub showed no concern.

87.     Once Weintraub's office decided to turn over evidence, it was shown in a recorded interview that took place on or about July 8, 2021, that Reiss and Bell had neither spoken to Hime or Ratel, nor did Reiss or Bell observe any of the evidence that Reiss and Bell claimed existed in the affidavit, *to wit,* that Plaintiff was deepfaking videos, making nudes of Hime, altering social media accounts and sending threats.

88.     Bell was told by Jennifer Hime that Hime had deleted evidence. Bell never once requested that Hime actually show him the nudes, altered images, or the threats that were supposedly on Hime's phone and Bell did nothing to obtain the deleted evidence or to preserve it.

89.     Jennifer Hime also told Bell that her daughter disposed of her original Iphone that supposedly contained the deepfaked video, the threats, voicemessages and altered images that Weintraub told the press was done by Plaintiff. The disposal of Hime's Iphone **<u>did not</u>** even concern Bell.

90.     Hime had posted on social media that she deleted the "420gucciganng" account and also an account "@MadiHimepolice". Bell and Weintraub knew about this and did nothing.

91.     Moreover, Jennifer Hime confirmed in the interview with Bell that her Hime deleted evidence.  It was discovered that Hime also posted on social media that she deleted the "420guccigang" account.

92.    Also, the police neither questioned nor issued a warrant for Hime's private "@MadiHimepolice" social media account, another deleted account that is believed to have defamatory posts.

93.    It is believed and therefore averred that there are more defamatory statements about Plaintiff in Hime's deleted accounts.

94.    Jennifer Hime claimed that her daughter deleted evidence because her daughter was afraid that she would be told to stay off social media.

95.    Hime confirmed to Bell that she had created a timeline for Reiss. **This timeline included Jennifer Hime's admission that Hime was in fact altering pictures of herself to make herself appear nude and selling them to men on Tinder**.

96.    Jennifer Hime told police as early as July of 2021 that there was no evidence that Plaintiff, either in texts or voice messages, send Hime messages that stated "you should kill yourself".  Police and Weintraub concealed this and no defendant retracted these false statements to the press.

97.    Therefore, Reiss, with Bell's assistance, swore falsely in both Affidavits under oath that:

- that Plaintiff created the altered video, and that it was the work of a "Deepfake"

- that Plaintiff sent texts and left voicemails that said "you should kill yourself"

- that Plaintiff altered social media accounts to make Hime appear nude drinking and vaping

- that Plaintiff  altered the social media accounts of Ratel

98.    As noted, there was **never** any evidence of the above.  At trial, the police admitted that there were no communications from Plaintiff to any of the minors, that there were no altered nude images and certainly no deepfaked videos.

### D.    WEINTRAUB PRESSES THE FALSE CHARGES TO THE END AND STILL FALSELEY PUBLISHES THAT PLAINTIFF DEEPFAKED VIDEOS, MADE NUDE IMAGES AND SENT THREATS TO MINORS

99.    Up until the first day of Plaintiff's trial, Weintraub and Reiss, aided by Bell after Reiss' disgraced exit, continued state that Plaintiff cyberharassed the minors.

100.    The statute specifically provides that in order to be able to prove cyberharassment of a child, there must be a seriously disparaging statement or opinion …and it must be sent directly to a child or published on social media*.  **Plaintiff did none of this as admitted by Hime and the police at trial***.

101.    Bell testified that nothing was sent to the minors.

102.    Ratel was 18 at the time the alleged cyberharassment occurred, another false statement that was made publicly by Reiss and Weintraub.

103.    Despite knowing that he had no evidence to even remotely press cyberharassment charges against Plaintiff, on the first day of trial, Weintraub through his assistant district attorney, and Bell, threatened Plaintiff that if she pursued a defense in the case, that they would attempt to dig up other charges against her.  When Plaintiff told them to "pound sand", the cyberharassment charges were dropped. [18]

104.    All defendants knew that Plaintiff had not deepfaked videos, made nudes or sent threats to any minors.

---

[18] The trial judge was incensed about this and was made aware of the retaliatory threats made to Plaintiff.

105.    However, to this day, Weintraub's district attorney public website still airs the complete and false press conference.  Every one of Weintraub's statements about Plaintiff at this press conference are false and defamatory.

106.    Despite being accused in Court in or around August of 2022 that the defamatory press conference was still on his website, Weintraub intentionally has not:

  a.   removed the false press conference video from his webpage

  b.   Retracted or even attempted to correct the false and defamatory statements that Plaintiff cyberbullied minors by deepfaking videos, making nudes of minors and sending threats to minors.

**COUNT I**
**PLAINTIFF v. MATTHEW REISS, LOUIS BELL AND MATTHEW WEINTRAUB**
**42 U.S.C. 1983-FABRICATED EVIDENCE**

107.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

108.    Defendants Reiss, Bell and Weintraub, acting within the course and scope of their employment, under the color of state law, and pursuant to the customs, policies, and practices of Hilltown Township and the County of Bucks, intentionally and maliciously swore under penalties of perjury that Plaintiff committed the crime of cyberharassment of a minor in that she deepfaked videos, made nudes of minors, and sent messages to minors that the minors should "kill themselves".

109.    To the extent that Defendants Reiss, Bell and Weintraub pursued and obtained an arrest warrant against Plaintiff through false and misleading statements and or pursued criminal charges *to wit*,  deepfaked videos, made nudes of minors and sent direct threats to them, were

without probable cause, and said acts were outside the course and scope of their respective employment.

110.    The Fourteenth Amendment protects the "due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." If any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence.[19]

111.    At the time the above defendants made these outlandish allegations, they knew that no such evidence existed. None had any training in deepfake technology or had any video analyzed by an expert.  None of these defendants had seen deepfaked videos, nudes of minors or threats, nor did they ever have probable cause to charge Plaintiff with these crimes. None of these defendants bothered to obtain any of the phones of the so-called "victims" which would have shown them from the outset that this evidence did not exist.

112.    Rather, Reiss, Bell and Weintraub allowed Hime to destroy her phone and permitted the false and slanderous public allegations that Plaintiff deepfaked videos to be disseminated to the press.

113.    Moreover, it was confirmed by County Detectives that there was no evidence of any deepfakes.

114.    Weintraub took great pains to stir up an international media frenzy by calling a press conference where he repeatedly and in great detail described that the essence of this case was that Appellant had "deepfaked" videos of the victims in the case. *Id.* at 6:00 (alleging the defendant used her cell phone to manipulate media "which is the crux of this case") and 14:40

---

[19] See, e.g*., Doe ex rel. Magee v. Covington Cnty. Sch. Dist. Ex rel. Key*s, 675 F.3d 849, 867 (5th Cir. 2012)).

(alleging she manipulated the videos by taking existing images from existing social media for all 3 victims and sending them to the gym).

115.    These defendants knew **and concealed** that Jennifer Hime had admitted to them that it was her daughter that was making and selling nudes of herself, and Hime admitted at trial to vaping, smoking marijuana and destroying evidence which she falsely told the press that she did not in order to cast a false light on Plaintiff.

116.    Reiss, Bell  and Weintraub allowed the false and fabricated cyberharassment charges to proceed to the very day of trial whereupon Bell and Weintraub then threatened Plaintiff that if she mounted a defense, that they would find other evidence against her.  When Plaintiff told Bell to "pound sand", he and Weintraub dropped and *nolle prossed* the cyberharassment charges.

117.    However, the damage was done as Reiss and Weintraub had given numerous false statements to the press which they refused to retract such as:

**The Mother of All Deepfakes**
An unsettling cheerleading scandal is going to court, and it raises questions about the threat of video-manipulation technology in sports—and beyond.[20]


Without her own daughter's knowledge, police say, Spone used deepfake technology to manipulate the media of cheerleaders that she perceived as rivals. "The [goal]," said Matt Weintraub, Bucks County's district attorney, "was to shame them and get them knocked off the team."

To pull this off, prosecutors allege, Spone relied on deepfake technology, which uses artificial intelligence to replace the likeness of one person with another in videos and in other digital media. In this case, Spone is believed to have altered the appearance of existing images and videos, yielding a product that reflected the likenesses of the victims.

---

[20] https://www.si.com/media/2021/05/12/deepfake-pompom-mom-daily-cover

### Mother charged with deepfake plot against daughter's cheerleading rivals[21]

**Pennsylvania woman accused of manipulating photos of three girls to make it appear they were drinking, smoking and even nude**

Spone manipulated photos from social media of three girls on the Victory Vipers cheerleading squad in Chalfont to make it appear they were drinking, smoking and even nude, investigators said.

Spone also sent messages with the so-called "deepfake" pictures to the girls and suggested they kill themselves, officials said.

### Cheerleader's mom created deepfake videos to allegedly harass her daughter's rivals[22]

Raffaela Spone was charged with three counts of cyber harassment.
The Hilltown Township Police Department confirmed the report to ABC News. The Bucks County District Attorney's Office did not immediately reply to ABC News' request for comment.

The girl and her coaches were sent photos that appeared to depict her naked, drinking and smoking a vape pen, according to police. Her parents told police because they feared the videos could lead to her daughter being kicked off the team, the paper reported.

Two more families came forward saying their daughters received similar messages, according to the Inquirer. Those victims were sent photos of themselves in bikinis, according to the report.

Police determined the videos were deepfakes -- digitally altered images that appear to be authentic. The images were created by mapping the girls' social media photos onto other images, the Philadelphia Inquirer reported.

118.    Based on the false misrepresentations and omissions therein as set forth above,

and in a negligent, reckless and deliberate manner, Plaintiff's Fourth Amendment rights were

violated.

---

[21] https://www.theguardian.com/us-news/2021/mar/15/mother-charged-deepfake-plot-cheerleading-rivals
[22] https://abcnews.go.com/US/cheerleaders-mom-created-deepfake-videos-allegedly-harass-daughters/story?id=76437596

119.    Weintraub's false allegations that Plaintiff "deepfaked" pictures and photos of the victims in this case nude, vaping, drinking, and smoking marihuana was the sole reason this case generated an international media circus.  A system that will permit a prosecutor to make false statements to the press in an attempt to inflame public opinion against someone and to hurl a defendant into such a firestorm, along with the expense, confusion, and overwhelming legal effort that are involved in any high profile, sensational media circus, based solely on false allegations, clearly lacks Due Process in the most common-sense fashion of the concept.

120.    Weintraub has allowed these false charges and statements about Plaintiff to be posted to his website to this very day.

121.    At his press conference and in subsequent statements to the press, Weintraub exceeded the duties of an elected district attorney by making improper statements concerning evidence, made false statements concerning evidence which he knew, should have known, or through reasonable effort would have known were false, and provided a public forum to defame the Plaintiff, portray her in a false light, and damage her personal and professional reputation.

122.    Weintraub's actions at the press conference did not serve any legitimate purpose consistent with his sworn duties as the elected District Attorney, did not advance the criminal case against Plaintiff, and were perpetrated with actual malice in a brazen, bold, and desperate effort to advance his political career, as he sought reelection. At the press conference, Weintraub violated the canons of ethics generally for attorneys and the specific canons of ethics for prosecutors.

123.    As a consequence of the wrongful actions, Plaintiff was falsely accused, arrested and publicly harassed for the deepfakes, nudes and death threats, and was greatly humiliated and disgraced, suffered great mental and physical anguish, suffered severe damage to her reputation

and standing in the community, was forced to undergo the rigors and strain of a false arrest, detention, national and international media attention, death threats, and has otherwise been damaged and injured in diverse other manners, to her great detriment.

124.    To show their actual malice towards Plaintiff, Reiss, Bell and Weintraub knowingly and intentionally failed to turn over evidence, failed to investigate evidence and allowed evidence to be destroyed:

- The original phones of both Himes were destroyed

- Hime deleted the same social media accounts that police accused Plaintiff of "altering to make her appear nude, drinking and vaping"

- Hime deleted a Tik Tok account known as "madihimepolice"

- Hime provided Reiss with passwords to her private social media accounts which Reiss accessed and no investigation was made by police after his resignation, or his laptop searched and turned over

- Jennifer Hime intentionally withheld evidence of the police

- Jennifer Hime texted Sherri Ratel that she information that could hurt Hime and police never questioned this

- Jennifer Hime turned over a box of "evidence" to Reiss and Bell which was never disclosed or tuned over to Plaintiff

125.    As a result of their deliberate and reckless disregard for Plaintiff's constitutional rights, these defendants should be held responsible for punitive damages.

126.    Plaintiff has suffered from PTSD and is under medical care for severe emotional distress.  Plaintiff will never be able to work in her chosen field again, especially with minors.

WHEREFORE, Raffaella Plaintiff demands judgment against Matthew Reiss, Louis Bell and Matthew Weintraub for damages in excess of Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post-judgment interest, and any further relief as is just and appropriate.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS- FALSE STATEMENTS/DEFAMATION**
**PLAINTIFF V. MATTHEW J. REISS AND MATTHEW WEINTRAUB**

127. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

128. Defendants Reiss and Weintraub embarked upon a vitriolic public campaign designed to damage the personal reputation of the Plaintiff in violation of the Fourteenth Amendment to the United States Constitution. Defendants either published, or caused to be published, false and defamatory statements about Plaintiff.

129. As set forth in detail above, Reiss and Bell purposefully and intentionally charged Plaintiff with creating deepfakes, nudes and sending threats to alleged minors when no such evidence existed.

130. Neither Reiss nor Bell saw any of the evidence. Reiss completely fabricated the above and then purposefully gave press statements to humiliate Plaintiff.

131. Bell knew at least a year before Plaintiff's trial that no such evidence existed. When Jennifer Hime admitted to him, after Reiss' disgraced exit from the police, that the phones had been disposed of, Bell stated that he would have to start over. Yet, Bell and Weintraub never withdrew the false charges of cyberharassment or retracted their defamatory statements that Plaintiff deepfaked videos, made nudes of minors and sent threats that they should kill themselves.

132.    Weintraub stated to the press that it was Plaintiff's intent to "slut shame" these minors.  Weintraub's false claims to the press further included:

a.   that Plaintiff was arrested as the result of a very thorough and lengthy investigation. Press Conference, at 1:45.

b.   Weintraub said that Plaintiff via texts or calls directly to the victims told them "you should kill yourselves" (*Id*. at 3:26). This never occurred.

c.   That Plaintiff took photos from Hime's social media accounts and modified them to show her drinking, vaping, and nude with a bathing suit edited out and replaced with skin tone but "no genitalia showing"; that police reviewed the images and found them to be "deep fakes" "by looking behind the curtain" and using metadata; that Plaintiff captured pictures of the three victims and provided them with offensive labels including falsely stating Kayla was using "AttentionWhore69" as a screen name"; and, that a search warrant at Plaintiff's home determined that she used her call phone to manipulate media and create the "deep fakes," which is the crux of this case." Press Conference at 3:26-6:10.

133.    The statements were defamatory and defamatory per se.

134.    At all relevant times, Reiss was acting under color of law and within the course of their official duties.

135.    Because of his false statements to the press, Reiss is not entitled to qualified immunity for his actions and omissions.

136.     Moreover, and as detailed above, Weintraub's intent by giving false statements to the press by "parroting" the criminal complaint without any investigation on his own, and then to

editorialize beyond that complaint, was to create a false picture of Plaintiff to make it appear that she was a child predator.

137.    These were blatant fabrications. Weintraub knew that there was no such evidence of these or that the police had "connected the dots" at the time he made the above-described public statements. Since the outset, Weintraub's narrative of the events as told to the public bears little resemblance to the actual facts.

138.    Weintraub knew that the news intended to widely disseminate his interviews on multiple mediums, including television, the radio and the internet.

139.    The statements were defamatory.

140.    The statements were defamatory per se. Weintraub's conduct was not privileged, in that he did not have probable cause, had not conducted a thorough investigation, made statements and claims they would not have made in the exercise of ordinary care, did not act in good faith, knew there was no such evidence and intended to destroy Plaintiff's reputation.

141.    Public officials such as Weintraub are still liable, just as ordinary citizens, for defamatory statements made without the scope of their authority. "Given the great potential for harm, the privilege must be limited to those statements and actions which are in fact 'closely related' to the performance of... official duties." *McCormick v. Specter,* 275 A.2d 688,689 (Pa.Super. 1971). The immunity "privilege may be abused and lost, and ... becomes unavailable if and when the ... high public official[] acts in matters outside his jurisdiction or beyond the scope of his powers or duties." *Matson v. Margiotti,* 88 A.2d 892, 895 (Pa. 1952) (emphasis in original).

142.    A public official acting outside the scope of his authority or "without jurisdiction over the subject matter" is not entitled to immunity from liability for defamation. *Cooper v.*

*O'Conner* 99 F.2d 135, 138 (D.C. Cir. 1938). For the immunity privilege to apply, "[a]

communication ... must be made upon a proper occasion, from a proper motive, and must be

based upon a reasonable or probable cause." *Biggans v. Foglietta,* 170 A.2d 345, 346 (Pa. 1961)

(emphasis added).

143.    Because of his false statements to the press, neither Reiss nor Weintraub are

entitled to qualified immunity for their actions and omissions.

144.    These false stories have destroyed the life of Plaintiff. It was done in a

premeditated manner, and done to personally harm Plaintiff as much as possible. It was done

with malice and with complete disregard to her legal rights. Plaintiff was slandered, libeled and

defamed. Weintraub told the press, *inter alia*, that Plaintiff "slut shamed" the minors and used

deepfake technology to target the minors.   These were completely and utterly false.

145.    This was all done in a manner to inflict the maximum amount of embarrassment,

ridicule, humiliation and shame and to cause Plaintiff to suffer an immense amount of financial

strain, emotional pain and stress.  Weintraub never told the press that Plaintiff was "innocent

until proven guilty"  Weintraub reveled in having the press come down on Plaintiff in an election

year for him.

146.    Moreover, Weintraub continued the false charges and the false statements that he

made to the press to the day of Plaintiff's trial.

147.    To this day, and knowing that the cyberharassment charges were false and *nolle

prossed*, Weinraub's website still published the following:



**BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE**

**Matthew D. Weintraub**
Bucks County District Attorney
100 N. Main Street, 2nd Floor
Doylestown, PA 18901
(215) 348-6344
www.bucksda.org

## CHALFONT WOMAN CHARGED WITH CYBERBULLYING DAUGHTER'S CHEERLEADING RIVALS

MARCH 15, 2021

148.    Further, to this day, Weintraub still has published on the internet the original press conference that anyone can watch wherein for 20 minutes he continues to spew the false charges of cyberharassment against Plaintiff and that she made dee[fakes, created nudes, and sent threats directly to minors.

149.    This conduct was grossly negligent, and for the most part intentional in nature. Plaintiff sues for all damages associated to that harm for all elements she is entitled to receive.

WHEREFORE, Raffaella Spone demands judgment against Matthew Reiss and Matthew Weintraub for damages in excess of Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

**COUNT III**
**PLAINITFF V. HILLTOWN TOWNSHIP AND THE COUNTY OF BUCKS**
**42 USC§ 1983-*MONELL* CLAIMS**

150.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

151.    Defendant Hilltown Township is a Township of the Second Class and is governed by a Board of Supervisors ("Board"). The Board has hiring and firing authority over its police, from its Chief down to the rank-and-file officers such as Reiss and Bell.

152.    Hilltown Township was on notice of Reiss' past, as he has had two civil rights lawsuits in the Eastern District.  Hilltown certainly had notice of Reiss' possession of child pornography and did nothing to remove him from the Plaintiff's case.

153.    Further, knowing that Reiss was raided in April of 2021 and found to possess child pornography, Reiss should have been removed from Plaintiff's case especially since he alleged that Plaintiff had nudes of the alleged minors which police knew there was in fact no such nudes.

154.    An investigation into what nudes Reiss had in his possession should have been made by Hilltown and certainly by Weintraub.

155.    Further, Reiss held himself out as an expert in deepfake technology claiming that he could see with his "naked eye" elements [of the vaping video] that "don't make sense."[23] Reiss later admitted that he had no such training.   The statement was clearly false and intended to mislead the public into believing that Reiss was an expert and that Plaintiff had deepfaked the vaping video.

156.    Plaintiff believes and therefore avers that the defendant, Hilltown Township, has adopted and maintained a recognized and accepted policy, custom and/or practice of condoning and/or acquiescing in condoning false arrest and failure to remove and investigate officers charged with child pornography. Said policy, custom and practice, which includes the following, violate the Fourth and Fourteenth Amendments of the Constitution of the United States as well as federal statutory law and Pennsylvania law:

a.    failing to have clear, concise, and appropriate directives to prevent or discourage the use against persons for arrest or detention without probable cause;

---

[23] Daily Dot, **A 'deepfake' of a vaping teen is at the center of a harassment case—but what if it's not faked?** 5/3/2021

b.      failing to discipline its police officers including Reiss and Bell for utter failure to conduct an investigation and participating in creating a national media frenzy against Plaintiff without probable cause;

c. For allowing Reiss to hold himself out as an expert in deepfake technology when he had no such training;

d.      failing to instruct officers to intervene to prevent the use by another officer or officers of illegal false arrest and the use of false affidavits;

e.      failure to preserve evidence or take any steps to prevent the destruction of important evidence

f.      allowing knowingly false charges to proceed to a trial

157.    Plaintiff believes and therefore avers that the defendant, Hilltown Township, has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including Reiss and Bell, regarding individuals' right to equal protection and to be free from being falsely arrested, which policy and/or custom and/or practice violates the Fourth and Fourteenth Amendment of the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

158.    The actions that these police officers have taken against Plaintiff, reflect the policy, practice and/or custom of Hilltown Township and its police officers to permit the fabrication of criminal charges; permit officers to remain in active duty; inadequately investigate charges of nudes or nudity of minors, and/or intentionally ignore charges of misconduct against its officers; allow its officers to prepare false affidavits based on fabricated evidence from private citizens.

159.    Prior to the events described herein, Hilltown Township developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the constitutional rights of persons, which caused the violation of Plaintiff's rights; namely, Hilltown Township did not adequately require appropriate training or re-training of police officers who were known to have engaged in civil rights violations such as Reiss.

160.    The policies, practices and customs of Hilltown set forth above are designed to exonerate police officers involved in the commission of acts of false arrest by Township officials responsible for police oversight.

161.    Hilltown Township has intentionally continued to perpetuate such policies and practices and/or has deliberately failed to eliminate them. The foregoing acts, omissions, systemic deficiencies, practices, customs and deliberate indifference constitute the policies, practices and customs of Hilltown Township and have caused police officers of the Township, such as Reiss, to violate the constitutional rights of citizens, including Plaintiff.

162.    The violations and injuries suffered by Plaintiff were a foreseeable result of the policies, practices, customs and deliberate indifference of the Hilltown Township.

163.    Hilltown Township's violations of the Fourth Amendment to the Constitution of the United States also constitute violation of Plaintiffs' civil rights under 42 U.S.C. § 1983.

164.    As a direct and proximate result of the actions of  Hilltown Township, Plaintiff also has suffered damages including loss of liberty, and out of pocket expenses including his attorney fees, impairment of her reputation, personal humiliation, mental anguish and suffering.

165.    Moreover, Weintraub, conspiring with Reiss and Bell, knew their conduct was unlawful, but acted maliciously, willfully and knowingly, with specific intent to deprive Plaintiff of her right to be free from malicious prosecution for false cyberharassment charges.

166.    Weintraub knew at least a year before trial that there was no evidence of deepfakes, nudes or threats and he purposefully and intentionally withheld such evidence to further his false narratives to the press.

167.    Weintraub never requested that Reiss be removed the case and simply took Reiss at his word that Plaintiff deepfaked videos, made nudes and sent threats directly to minors.

168.    Defendant the County of Bucks blessed and accepted the outlandish violations and failed to establish adequate policies for training, supervising and disciplining police and prosecutors, respectively, such that Plaintiff would not have been prosecuted unlawfully for false charges, and/or failed to adequately train, supervise and discipline its officers and prosecutors in violation of Plaintiff's constitutional rights.

WHEREFORE, Raffaella Plaintiff demands judgment against Hilltown Township and the County of Bucks for damages in excess of  Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post-judgment interest, and any further relief as is just and appropriate.

### COUNT IV
### COMMON LAW DEFAMATION
### PLAINTIFF V. ALL DEFENDANTS

169.    Plaintiff incorporates the above paragraphs by reference as if set forth fully at length.

170.    In addition to Reiss and Weintraub's press tours and false statements as described above, Hime and Ratel continued to publish false and malicious statements about the Plaintiff that included, *inter alia:*

- Hime posting a Tik Tok video where a supposed "news anchor" states that Plaintiff created deepfake videos and that she should kill herself

- Hime posting on social media that Plaintiff was "dumb";

- Ratel posting a Tik Tok where she is laughing while scrolling through headlines about Plaintiff creating deepfakes.

- Ratel posting a Tik Tok that had Plaintiff's mugshot and screenshots of the internet headlines that  Plaintiff created deepfakes.

- Ratel stating on Tik Tok that she was a victim of Plaintiff.

- Hime posting another Tik Tok under "420guciganng" and talked falsely that she was stalked by Plaintiff.

171.    Their respective parents knew that these were posted, knew these to be false and still allowed them to be published.  Moreover, the social media accounts are now marked "private" wherein it is believed additional false statements are being published.

172.    Jennifer Hime made false statements to the press and was (and perhaps still is) in a film deal to falsely publish the cyberharassment allegations against Plaintiff such as the deepfakes.

173.    All of the above statements were false and known to be false when made.  The police and district attorney's office concealed the true facts and kept the evidence from Plaintiff until shortly before trial so that these defendants could continue the false narrative that they spewed to the press that Plaintiff was a "frightening cyberbully" and a child predator.

174.    At no time did any of defendants attempt to retract or correct the statements. These statements are now on the internet which can never be retracted.

175.    The false statements have caused Plaintiff to receive death threats, be harassed by neighbors, and for the entire Nation to view her as a person who as Weintraub stated, preys on minor children.

176.    All of the above statements were admitted false at trial as Plaintiff still had to clear her name regarding the cyberharassment.

177.    The statements that Plaintiff made deepfakes, nudes and sent threats were grossly false and constitutes defamation  and Plaintiff is entitled to an award of general and punitive damages.

178.    Plaintiff has suffered from PTSD and is under medical care for severe emotional distress.  Plaintiff will never be able to work in her chosen field again especially with minors.

WHEREFORE, Raffaella Spone demands judgment against Madeline Hime,  Kayla Ratel, Matthew Reiss, Louis Bell and Matthew Weintraub, jointly and severally, in excess of Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

## COUNT V
## INVASION OF PRIVACY/FALSE LIGHT
## PLAINTIFF V. ALL DEFENDANTS

179.    Plaintiff incorporates the above paragraphs by reference as if set forth fully at length.

180.    The actions of Reiss, Weintraub and the Himes violated Plaintiff's right of privacy by placing Plaintiff in a false light before the eyes of others by the false cyberharassment charges, as well as family, friends and the general public.

181.    By such unauthorized publication and false statements given to the press and posting on social media that Plaintiff made deepfakes, nudes and sent threats and messages that "you should kill yourselves",  and posting that Plaintiff stalked and cyberbullied minors, the defendants invaded Plaintiff's right to privacy, subjected Plaintiff to ridicule

and contempt, injured Plaintiff's personal esteem, reflected disgracefully on Plaintiff's character, diminished Plaintiff's reputation and good name among her family and friends, and destroyed Plaintiff's peace of mind, and caused severe distress.

182.    The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

WHEREFORE, Raffaella Spone demands judgment against Madeline Hime,  Kayla Ratel, Jennifer Hime, Sherri Ratel, Matthew Reiss, Louis Bell and Matthew Weintraub, jointly and severally, in excess of  Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

Respectfully submitted:

Dated: January 10, 2022

Robert J. Birch, Esquire
Attorney for Plaintiff
ID. No. 65816
PO Box 1133
North Wales, PA 19454
(610) 277-9700
robert@robertbirchlaw.com