## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAFAELLA MARIE SPONE,

                  **Plaintiff,**

    v.

MATTHEW J. REISS,                         **CIVIL ACTION**
LOUIS BELL,
HILLTOWN TWP. MUN. AUTH.,        **NO. 23-0147**
MATTHEW WEINTRAUB,
COUNTY OF BUCKS,
JENNIFER HIME, and
MADELINE HIME,

                  **Defendants.**

### MEMORANDUM

**Scott, J.**                                                    **March 14, 2024**

       Beginning in July 2020, Plaintiff Rafaella Marie Spone started sending messages about three teenaged girls who were members of the same competitive cheerleading gym as Plaintiff's daughter. Posing as a "concerned parent," Plaintiff anonymously texted the gym's owners and the girls' mothers, accusing the cheerleaders of drinking, vaping, and posting revealing photos on social media. Based on this conduct, a jury in Bucks County, Pennsylvania, convicted Plaintiff of three counts of harassment. The Superior Court of Pennsylvania affirmed Plaintiff's convictions on November 14, 2023.

       Plaintiff now brings this civil action alleging that she was vilified in the press throughout the criminal investigation for something that she did not do. Specifically, she alleges she was

wrongfully accused of creating deepfakes[1] of Madeline Hime, who is one of the three complainants in the criminal case and a Defendant in this action. Plaintiff alleges that the images and video in question were *not* deepfaked (by Plaintiff or anyone else). Plaintiff's Complaint focuses on national media coverage that latched onto that false deepfake narrative and contends that Plaintiff wasted considerable resources preparing a defense against the deepfake accusations in her criminal trial, only for the prosecutor to drop or nolle pros the relevant charges immediately before trial began.

In her Complaint, Plaintiff raises claims under 42 U.S.C. § 1983 of (1) fabricated evidence in violation of the Fourth or Fourteenth Amendment against Defendants Matthew Reiss, Louis Bell, and Matthew Weintraub (Count I), (2) defamation in violation of the Fourteenth Amendment against Defendants Matthew Reiss and Matthew Weintraub (Count II), and (3) *Monell* liability (or municipal liability) against Defendants Hilltown Township and the County of Bucks (Count III). ECF No. 1. Additionally, Plaintiff raises state-law tort claims of defamation and "invasion of privacy/false light" against all Defendants (Counts IV, V). *Id.*

Currently pending before the Court are the following four motions: (1) Defendants Jennifer Hime and Madeline Hime's Motion to Dismiss (ECF No. 13); (2) Defendant Matthew Reiss' Motion to Dismiss (ECF No. 20); (3) Defendants Matthew Weintraub and County of Bucks' Motion to Dismiss (ECF No. 21); and (4) Defendants, Hilltown Detective Louis Bell and Hilltown Township's Motion to Dismiss (ECF No. 22). These Motions have been fully briefed. For the reasons set forth below, the Motions to Dismiss filed by Defendant Reiss, Defendants Matthew

---

[1]     A deepfake is "media, *esp.* a video, that has been digitally manipulated to replace one person's likeness convincingly with that of another," and it is "often used maliciously to show someone doing something that he or she did not do." *Deepfake*, Oxford English Dictionary, https://www.oed.com /dictionary/deepfake_n?tab=meaning_and_use - 1345352340 (last visited Jan. 17, 2024).

Weintraub and County of Bucks, and Defendants Hilltown Detective Bell and Hilltown Township (ECF Nos. 20, 21, 22) will be granted as to the federal claims and Defendants Jennifer Hime and Madeline Hime's Motion to Dismiss (ECF No. 13) will be denied as moot. An appropriate Order will follow.

I.   **BACKGROUND**[2]

    A.   **Alleged Fabricated Evidence**

Plaintiff's Complaint alleges that three Defendants—(1) Matthew Reiss, a former police officer in the Hilltown Township Police Department, (2) Louis Bell, a detective in the Hilltown Township Police Department ("Detective Bell"), and (3) Matthew Weintraub, the District Attorney of Bucks County ("DA Weintraub")—violated 42 U.S.C. § 1983 by using fabricated evidence to wrongfully charge Plaintiff with three counts of cyber harassment of a minor. ECF No. 1 ¶¶ 2–4, 11, 108. In support of this Count, Plaintiff puts forth the following allegations.

Plaintiff claims that Mr. Reiss, with Detective Bell's assistance, prepared affidavits of probable cause to support a search warrant and an arrest warrant that contain material misstatements. *See id.* ¶¶ 23–30, 97, 108–11. Although Plaintiff does not attach either affidavit to her Complaint, she claims that one or both affidavits stated that: (1) Plaintiff directly sent Madeline Hime texts and voice messages that said "you should kill yourself"; (2) Plaintiff doctored a video of Madeline Hime vaping by using deepfake technology; and (3) "[t]hat Hime's social media accounts were doctored to make it appear that she was nude, drinking alcohol or vaping." *Id.* ¶¶ 24, 87 (internal quotations omitted).

Plaintiff further alleges that Mr. Reiss filed a criminal complaint that charged her with

---

[2]    The Court writes for the parties, so a detailed recitation of the facts is unnecessary. As required at this stage of the litigation, the Court accepts the factual assertions in Plaintiff's Complaint as true.

"three counts of Cyber Harassment of a Child, 18 Pa. C.S.A. 2709 (a.1)1(i) for sending the altered videos, nudes and death threats directly to [Madeline] Hime and [Kayla] Ratel [another complainant] while they were minors."[3] *Id.* ¶¶ 29–30. However, Ratel was not a minor at the time. *See id.* ¶ 24 n.2.

Plaintiff alleges that when Defendants Mr. Reiss, Detective Bell, and DA Weintraub made these allegations, "they knew that no such evidence existed," and they had not personally seen any deepfaked videos, nudes of minors, or threats, and they never had "probable cause to charge Plaintiff with these crimes." *See id.* ¶ 111. Plaintiff is presumably referring to the nolle prossed cyber harassment charges. *See id.* Finally, Plaintiff states that "Reiss, Bell and Weintraub allowed the false and fabricated cyberharassment charges to proceed to the very day of trial," when Detective Bell and DA Weintraub "dropped and *nolle prossed* the cyberharassment charges." *Id.* ¶ 116.

The fabricated evidence allegedly harmed Plaintiff in two ways: First, she was vilified in the media as a child predator. *See id.* at p. 3, ¶¶ 136, 144. Second, she wasted considerable resources on preparing an unnecessary trial defense, which included the hiring of an expert to defend her from claims that the prosecution did not intend to pursue. *See id.* ¶ 61. Plaintiff claims that her expert discovered that law enforcement knew or had reason to know that the cyber harassment claims were false for at least a year before her trial.[4] *See id.* ¶ 69.

---

[3]     This criminal complaint also charged Plaintiff with three counts of harassment under 18 Pa. C.S.A. § 2709 (a)(5). *See* ECF No. 21, Ex. A.

[4]     The Court notes that in her responses to Defendants' Motions to Dismiss and at oral argument, Plaintiff's fabricated evidence claim evolved. Although Count I of the Complaint is narrowly focused on pretrial injuries specific to the nolle prossed cyber harassment charges, in Plaintiff's responses to the Motions to Dismiss and at oral argument, Plaintiff makes arguments about the impact that the alleged fabricated evidence had on her *trial*, which resulted in harassment convictions. However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007)

**B.      Alleged Defamation**

Plaintiff's Complaint largely focuses on the national media coverage of Plaintiff's arrest and trial. Plaintiff claims that statements Mr. Reiss and DA Weintraub made to the press amounted to defamation in violation of the Fourteenth Amendment. ECF No. 1. ¶ 128. Additionally, Plaintiff raises state tort claims of defamation and invasion of privacy / false light against "all defendants"— i.e., Mr. Reiss, DA Weintraub, Detective Bell, Madeline Hime, Jennifer Hime, Hilltown Township, and Bucks County.[5] *See id.* ¶¶ 169–182.

The Complaint alleges that Mr. Reiss falsely stated that Plaintiff made deepfakes in an April 8, 2021, news article. *See id.* ¶¶ 81–83. Additionally, the Complaint cites many allegedly defamatory statements that DA Weintraub made to the press about Plaintiff's case. *See id.* ¶¶ 31–62, 105–06, 114, 117, 119–22, 128–49. The Complaint also cites public statements that Madeline Hime and Jennifer Hime made to the press or on social media, and it alleges that Jennifer Hime had conversations with a film company about creating a movie about the case. *See id.* ¶¶ 64–66, 71, 75, 77–80, 170–72. The Complaint does not identify any specific statements that Detective Bell made. ECF No. 22 at 17.

**C.      Plaintiff's Conviction & Appeal**

Plaintiff's Complaint fails to mention that, in addition to being charged with three counts of cyber harassment of a child, Plaintiff was charged with three counts of harassment under 18 Pa. C.S.A. § 2709 (a)(5). ECF No. 21, Ex. A. Although Plaintiff indicates in her Complaint, that the three counts of cyber harassment of a child were *nolle prossed* on the first day of her trial (ECF

---

(citations omitted), and accordingly, this Court will not consider such additional allegations at this time.

[5]      The Complaint also asserts these claims against Sherri Ratel and Kayla Ratel, but Plaintiff has since voluntarily dismissed her claims against the Ratels with prejudice. *See* ECF Nos. 47, 48.

No. 1 ¶ 103), she does not detail that the harassment charges were still pursued and that Plaintiff was ultimately convicted of the three counts of harassment under 18 Pa. C.S.A. § 2709 (a)(5). ECF No. 21, Ex. A. This conviction was recently affirmed by the Pennsylvania Superior Court. *See Com. v. Spone*, 305 A.3d 602 (Pa. Super. Ct. 2023), copy filed at ECF No. 52. The Court takes judicial notice of Plaintiff's criminal docket and of the Pennsylvania Superior Court's recent opinion affirming Plaintiff's harassment convictions.[6]

In affirming Plaintiff's harassment convictions for sending anonymous messages regarding the behavior of cheerleaders from the same competitive cheerleading gym as Plaintiff's daughter, the Superior Court made two legal determinations that are important in this Court's analysis. First, the Superior Court held that sufficient evidence supported Plaintiff's harassment convictions under 18 Pa. C.S.A. § 2709 (a)(5). *See id.* at 606–08. 18 Pa. C.S.A. § 2709 (a)(5) provides that "[a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person communicates repeatedly in an anonymous manner." *Id.* at 607. The Superior Court affirmed these harassment convictions solely based on references to anonymous communications that Plaintiff made to the gym owners and to the complainants' mothers. *See id.* at 605–08. The Superior Court's opinion does not mention deepfakes in its analysis of the sufficiency of the evidence supporting Plaintiff's harassment convictions. *See id.* Thus, the Superior Court's opinion raises a very strong inference that Plaintiff was not convicted of harassment because she altered images of teenagers— Plaintiff was convicted of harassment because she launched a smear campaign on other teenagers at her daughter's cheerleading gym, anonymously accusing them of participating in

---

[6]     "In evaluating a motion to dismiss, [courts] may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

age-inappropriate activities.

Second, the Superior Court held that Plaintiff had waived the other issues she raised, including all of the issues relevant to the instant civil claims. Most importantly, Plaintiff had raised one appellate issue regarding the media attention on her case, and two appellate issues regarding the prosecution's decision to dismiss the cyber harassment charges immediately before trial. *See id.* at 610–13. The Superior Court held that Plaintiff had failed to ever raise these issues in the trial court through briefings or timely objections and accordingly, they had been waived. *Id.*

Notwithstanding Plaintiff's selective recitation of facts (e.g., her focus on cyber harassment charges and omission of anything regarding the anonymous text messages sent to the gym's owners), nothing in Plaintiff's filings in this Court meaningfully contradicts these findings by the Superior Court.

### D.   Procedural History of the Instant Action

Plaintiff filed the instant Complaint on January 13, 2023. ECF No. 1. On February 16, 2023, Jennifer and Madeline Hime filed a Motion to Dismiss the state tort claims against them. ECF No. 13. On March 16, 2023, Mr. Reiss filed a Motion to Dismiss. ECF No. 20. On March 17, 2023, one motion to dismiss was filed by DA Weintraub and County of Bucks (ECF No. 21), and another motion to dismiss was filed by Detective Bell and Hilltown Township. ECF No. 22. Plaintiff filed responses in opposition to all four motions to dismiss. *See* ECF No. 23 (Resp. to the Himes); ECF No. 38 (Resp. to Weintraub and Cnty. of Bucks); ECF No. 39 (Resp. to Bell and Hilltown Twp.); ECF No. 40 (Resp. to Reiss). The Himes, Mr. Reiss, and DA Weintraub and County of Bucks filed reply briefs on March 24, 2023, and April 28, 2023. *See* ECF No. 27 (Himes' Reply Br.); ECF No. 41 (Reiss' Reply Br.); ECF No. 42 (DA Weintraub & Cnty. of Bucks' Reply Br.). Plaintiff filed a Motion to Strike the Himes' Reply Brief (ECF No. 28), but this Court denied

the Motion because it was premised on a misunderstanding of the Court's policies and procedures. ECF No. 33. Thereafter, on May 5, 2023, Plaintiff filed surreplies to Mr. Reiss and DA Weintraub's Motions. *See* ECF No. 43 (Pl.'s Sur Reply to Resp. of Def. Reiss); ECF No. 44 (Pl.'s Sur Reply to Resp. of Def. DA Weintraub).

This case was reassigned from the Honorable Karen S. Marston to this jurist on February 24, 2023. ECF No. 14. This Court held status conferences on April 13, 2023, and July 25, 2023 (ECF Nos. 36, 46) and this Court heard oral argument on all four Motions to Dismiss on October 11, 2023. ECF No. 50. Finally, on November 17, 2023, counsel for Defendant Mr. Reiss notified the Court that the Pennsylvania Superior Court issued an opinion affirming Plaintiff's conviction on November 14, 2023. *See* ECF No. 52 (attaching Superior Court opinion).

## II.   **LEGAL STANDARD**

A complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). District courts in the Third Circuit use a three-step process to evaluate a motion to dismiss a complaint for failure to state a claim for relief. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022) (relying on framework established in *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787–90 (3d Cir. 2016) and *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009)). First, the court articulates the elements of the claims raised. *See id.* Second, the court reviews the complaint and disregards any allegations that are merely conclusory or formulaic recitations of the elements of the claim or that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *See id.* at 327–28 (internal citations omitted). Third, the court considers whether the remaining allegations plausibly entitle the plaintiff to relief. *See id.* at 328.

To do so, the court must assume that all well-pleaded factual allegations are true, construe the allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See id.* The plausibility standard does not require the complaint to establish a probability of relief or to demonstrate that all prima facie elements of a claim can be met. *See Ashcroft*, 556 U.S. at 678; *Fowler*, 578 F.3d at 210–11. Instead, a complaint plausibly pleads a claim if it raises "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft*, 556 U.S. at 678, or a "reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." *Lutz*, 49 F.4th at 328 (internal quotations omitted).

Generally, a district court evaluating a motion to dismiss can consider only the complaint's allegations, any exhibits attached to the complaint, and matters of public record; if the court exceeds those constraints, the motion to dismiss is converted into a motion for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) (citations omitted). However, a district court may properly consider documents that are "integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into a motion for summary judgment. *See id.* (language deemphasized and internal citation omitted).

**III.   DISCUSSION**

   **A.   Plaintiff's Fabricated Evidence Claim (Count I) is Barred by *Heck***

      1.   Fabricated Evidence Claims Generally

A plaintiff can state a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a "reasonable likelihood" that, without the fabricated evidence, she either would not have been convicted or would not have been criminally charged. *See Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (plaintiff who was convicted may state fabricated evidence claim by showing reasonable likelihood he would not

have been convicted); *Black v. Montgomery Cnty.*, 835 F.3d 358, 371–72 (3d Cir. 2016) (plaintiff acquitted at trial may state a fabricated evidence claim by showing a reasonable likelihood she would not have been criminally charged). A plaintiff demonstrates a "reasonable likelihood" by drawing a "'meaningful connection' between her particular due process injury and the use of fabricated evidence against her." *Black*, 835 F.3d at 372 (citing *Halsey*, 750 F.3d at 294 n.19).

The Third Circuit has predicted that successful fabricated evidence claims would be "unusual" cases, because evidence must meet certain standards to be considered "fabricated." *See id.* Fabricated evidence does not merely mean incorrect testimony or disputed testimony that later turns out to have been wrong. *See id.* Rather, the plaintiff should be able to show either that (1) the proponents of the false evidence were aware that the evidence was incorrect or (2) the evidence was offered in bad faith. *See id.* A plaintiff must "demonstrate that the fabricated evidence 'was so significant that it could have affected the outcome of the criminal case.'" *Id.* (quoting *Halsey*, 750 F.3d at 295).

### 2. The *Heck* Doctrine's Application to Fabricated Evidence Claims

In *Heck v. Humphrey*, the Supreme Court held that a plaintiff cannot raise a § 1983 claim based on an "allegedly unconstitutional conviction or imprisonment, or for [another] harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless she can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994). This is known as the *Heck* doctrine, and it can be stated in simpler terms: A plaintiff's § 1983 claim is barred if the district court's "judgment in favor of the plaintiff would necessarily imply the invalidity of [a] conviction or sentence." *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016)

(quoting *Heck*, 835 F.3d at 487). *Heck*'s requirement that a conviction must terminate in the § 1983

plaintiff's favor is sometimes referred to as the "favorable-termination requirement." *See, e.g.*,

*Coello v. DiLeo*, 43 F.4th 346, 353–54 (3d Cir. 2022).

A key principle underlying *Heck* is that § 1983 claims, like civil tort actions, "are not

appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512

U.S. at 486. The "favorable-termination requirement is rooted in pragmatic concerns with avoiding

parallel criminal and civil litigation over the same subject matter and the related possibility of

conflicting civil and criminal judgments." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019).

Thus, the *Heck* doctrine effectively bars people from using § 1983 actions to "collaterally attack[]

their underlying convictions, directly or indirectly." *Grier v. Klem*, 591 F.3d 672, 677 (3d Cir.

2010).

The *Heck* doctrine applies to fabricated evidence claims. In *McDonough v. Smith*, the

Supreme Court held that the statute of limitations begins for a fabricated evidence claim under §

1983 "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting

conviction has been invalidated within the meaning of *Heck*."[7] 139 S. Ct. at 2158. The Third

Circuit arrived at the same conclusion in at least two pre-*McDonough* cases. *See Floyd v. Att'y

Gen.*, 722 F. App'x 112, 114 (3d Cir. 2018); *Ortiz v. New Jersey State Police*, 747 F. App'x 73,

77–78 (3d Cir. 2018).

It is not clear whether the Third Circuit has ever held that a plaintiff can bring a § 1983

claim that is based only on charges that are nolle prossed or dismissed before trial, even though

the plaintiff was convicted of other charges stemming from the same arrest. In the absence of more

---

[7]     In repeatedly asserting only that *McDonough* "held that the statute of limitations on a
§ 1983 claim of fabricated evidence does not start until the criminal proceedings have ended,"
Plaintiff omits any reference to the favorable-termination requirement. *See* ECF No. 38-2 at 33;
ECF No. 39-3 at 27; ECF No. 40 at 29.

precise guidance, this Court relies on the general principle that the *Heck* analysis must be a case-specific or fact-based inquiry, "because a court must compare the content of the plaintiff's § 1983 claims with the basis of her conviction." *Ortiz*, 747 F. App'x at 77 (citation omitted). Thus, the Court considers whether Plaintiff's successful § 1983 claims based solely on pretrial activity that culminated with the nolle prossed charges would necessarily invalidate her harassment convictions.

### 3.   The Complaint Fails to Plausibly Plead a Fabricated Evidence Claim

Confusingly, Plaintiff forwards different theories of the harms caused by fabricated evidence in her Complaint and in her responses to Defendants' Motions to Dismiss. *See supra* Section I.A, n.4. The Complaint reflects a lack of awareness of the elements set out in *Halsey* and *Black*, and Plaintiff's fabricated evidence claim reads more like a defamation claim—there are many references to DA Weintraub's comments to the press, but there is very little explanation of how the alleged fabricated evidence improperly contributed to her arrest or conviction. *See* ECF No. 1 ¶¶ 114–26. Plaintiff asserts that "Defendants Reiss, Bell and Weintraub . . . intentionally and maliciously swore under penalties of perjury that Plaintiff committed the crime *of cyberharassment of a minor* in that she deepfaked videos, made nudes of minors, and sent messages to minors that the minors should 'kill themselves'." *Id.* ¶ 108 (emphasis added). Plaintiff also asserts that these Defendants "pursued and obtained an arrest warrant against Plaintiff through false and misleading statements and or [sic] pursued criminal charges . . . without probable cause," again asserting that the "false and misleading statements" were that Plaintiff deepfaked videos, made nudes of minors, and sent direct threats to minors. *Id.* ¶ 109. The Complaint *does not* explicitly mention the impact that the alleged fabricated evidence may have had on Plaintiff's harassment convictions. Therefore, construed in the light most favorable to Plaintiff, the Complaint

claims that Plaintiff would not have been charged with cyber harassment absent fabricated evidence.

The Court assumes for the sake of argument that Plaintiff *can* raise a fabricated evidence claim on charges that did not proceed to trial, but notes that the Third Circuit has never fully reached this issue. *See Villarosa v. North Coventry Twp.*, 711 F. App'x 92, 96–97 (3d Cir. 2017) (assuming without deciding that a plaintiff *could* bring a standalone fabricated evidence claim while noting that the Third Circuit had "never acknowledged a standalone Fourteenth Amendment claim arising from a pre-trial deprivation of a criminal defendant's due process rights, and [its] precedents strongly indicate any such claim would need to be brought under the Fourth Amendment.").[8] However, the Court is not persuaded that Plaintiff has plausibly pleaded that fabricated evidence influenced her pretrial investigation. Plaintiff alleges that Mr. Reiss and Detective Bell fabricated evidence in affidavits that were presented to (1) obtain a search warrant that allowed them to seize Plaintiff's phone and (2) arrest Plaintiff. In order to prove a fabricated

---

[8]    Both Mr. Reiss and DA Weintraub argue that Plaintiff may only plead a fabricated evidence claim based on charges that were pursued at trial. *See* ECF No. 20 at 7–8, 10–11; ECF No. 41 at 5–6; ECF No. 42 at 5–6. The Court declines to make such a finding, which is unsupported by the nonprecedential case law that Defendants have cited. Only one of the cases that Defendants have cited dismissed a fabricated evidence claim *because* it was brought by a plaintiff whose charges were dropped before trial, but that was only part of the court's reasoning, and the same jurist did not apply the same principle in a later case. *Compare Gahagan v. City of Phila.*, No. 21-cv-2523, 2022 WL 16745098, at *7 n.2 (E.D. Pa. Nov. 7, 2022) (Goldberg, J.) (dismissing fabricated evidence claim because plaintiff did not mention it until he opposed a summary judgment motion *and* because plaintiff's charges were nolle prossed before trial, so no trial had occurred where fabricated evidence could have been used) *with Williams v. Hammer*, No. 21-cv-0312, 2023 WL 3393407, at *3–5 (E.D. Pa. May 11, 2023) (Goldberg, J.) (holding that fabricated evidence claim survived motion to dismiss, even though plaintiff's charges were dismissed or nolle prossed before trial).

Absent express guidance from the Third Circuit or the Supreme Court, this jurist declines to dismiss a fabricated evidence claim solely because the alleged fabricated evidence was not presented at a trial. Fabricated evidence can be leveraged to secure warrants, coerce confessions, and induce guilty pleas—it is not intuitive to assume that the harm of fabricated evidence begins and ends with its usage at trial.

evidence claim, Plaintiff cannot merely allege (as she currently has) that the affidavits were sworn based only on Jennifer Hime's statements and that the officers did not independently verify those statements. Fabricated evidence is not merely evidence that police initially believe that turns out to be false. The reality of many criminal cases is that police often obtain search warrants or arrest warrants based on just witness statements, and witnesses can lie. That does not mean that the police *fabricated evidence* to obtain their warrants—it means that they believed lies.

Additionally, if the Court correctly interprets Plaintiff's theory to be that fabricated evidence was presented in the affidavits of probable cause that were used to secure a search warrant and arrest warrant, then it is not actually clear from the Complaint that the remaining (i.e., true or uncontested) allegations in those affidavits would have been insufficient to provide probable cause to search or arrest Plaintiff. Since the Superior Court was able to cite considerable evidence other than the deepfakes that supported her harassment convictions, it is certainly possible that independent statements in those affidavits would have provided probable cause to search Plaintiff's home and phone and arrest her. However, because Plaintiff failed to attach either affidavit to her Complaint, it is impossible for this Court to determine whether the search and arrest warrants were otherwise supported by probable cause. Therefore, Plaintiff has failed to satisfy her burden of alleging facts sufficient to establish that Defendants Mr. Reiss, Detective Bell and DA Weintraub knowingly stated deliberate falsehoods or acted with reckless disregard for the truth in their affidavits and there is a reasonable likelihood that absent that fabricated evidence Plaintiff would not have been criminally charged. Accordingly, the Court will dismiss this Count without prejudice.

4.    Plaintiff's Fabricated Evidence Claim is Barred by *Heck*

Normally, the Court would permit Plaintiff to immediately amend her Complaint to attempt

to cure the issues identified in the previous Section. However, such an amendment would be futile

at this point because Plaintiff's convictions are valid convictions that were recently upheld by the

Pennsylvania Superior Court. Thus, Plaintiff's criminal case has not terminated in her favor, and

accordingly, any plausible version of Plaintiff's fabricated evidence claim is barred by *Heck* until

Plaintiff can satisfy the "favorable-termination requirement." If Plaintiff's harassment convictions

are ever terminated in her favor, [9] Plaintiff may raise this claim within two years of the date of the

favorable termination.[10] For all of these reasons, Count I is dismissed without prejudice. *See Curry*,

835 F.3d at 379–80 (noting that *Heck*-barred claims should be dismissed without prejudice,

because the claim may be refiled if the conviction is invalidated).

**B.     Plaintiff Fails to State a Claim for Federal Defamation (Count II)**

Count II is labelled as "Violation of Civil Rights – False Statements/Defamation," and does

not mention § 1983, but the Court construes it as a Fourteenth Amendment defamation claim

brought pursuant to § 1983. Plaintiff asserts that two of the Defendants—Mr. Reiss and DA

Weintraub—violated her Fourteenth Amendment rights by "embark[ing] upon a vitriolic public

campaign designed to damage [her] personal reputation" and either "publish[ing], or caus[ing] to

be published, false and defamatory statements" about her. ECF No. 1 ¶ 128. This claim will be

---

[9]     The Superior Court determined that Plaintiff waived all of her claims related to the false
deepfake narrative and the nolle prossed cyber harassment charges because trial counsel failed to
raise those issues at trial. *See Com. v. Spone*, 305 A.3d at 610–13. The Supreme Court of
Pennsylvania could determine that the Superior Court erred (i.e., that these issues *were* properly
preserved for appeal), or Plaintiff could file a Post-Conviction Relief Act petition and assert that
trial counsel was ineffective for failing to preserve certain claims. Thus, the state courts have never
had opportunities to reach the merits of Plaintiff's claims about the allegedly fabricated evidence,
but there might be opportunities in the future for the courts to reach these claims or similar claims.

[10]     The Court declines to reach Defendants' additional arguments supporting their Motions to
Dismiss the fabricated evidence claims. To do so, the Court would prematurely comment on the
merits of the claim, and it may contradict the state court's findings about a potential *Brady* claim,
or any other claim based on the allegedly fabricated evidence. The state court will have access to
the trial record and is thus far better positioned than this Court to reach those issues.

dismissed without prejudice for failure to state a cognizable claim of defamation that violates the Fourteenth Amendment.

          1.     Plaintiff Fails to Meet the "Stigma-Plus" Test Required for Fourteenth Amendment Defamation Claims

Defamatory acts violate the Due Process Clause of the Fourteenth Amendment only if the alleged defamation "occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 183–84 (3d Cir. 2020) (quoting *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989)). This principle is often referred to as the "stigma-plus" test because the plaintiff must show stigma or reputational harm *plus something else*—i.e., some other deprivation or alteration of a right or status. The "stigma-plus" test was originally developed in *Paul v. Davis*, 424 U.S. 693 (1976). There, local police published a flyer with pictures of "active shoplifters" in the region that included the plaintiff, who had a shoplifting charge that was dismissed shortly after the flyer circulated. *See Paul*, 424 U.S. at 695–96. The Court concluded that this might be actionable as a state tort claim, but defamation that results in reputational harm alone does not infringe on a liberty or property interest or extinguish a status that is safeguarded by the Fourteenth Amendment. *Id.* at 711–12.

Both Mr. Reiss and DA Weintraub correctly argue that Plaintiff has pleaded her Fourteenth Amendment defamation claim as if it is a state tort defamation claim that happens to involve public officials, and she has not pleaded the specific "stigma-plus" standard for federal defamation claims. *See* ECF No. 20 at 12–13; ECF No. 41 at 4; ECF No. 21 at 12–13; ECF No. 42 at 7–8. The Complaint does not allege any harm that has resulted from the alleged defamation other than damage to Plaintiff's reputation. ECF No. 1 ¶¶ 128–49. Plaintiff addressed the "stigma-plus" test for the first time in her responses to DA Weintraub's Motion to Dismiss. *See* ECF No. 38 at 32–33; ECF No. 44 at 4–5. There, Plaintiff argues that her *arrest and prosecution* is the "plus" or the

additional liberty violation. *See id.*

It is unclear whether the Third Circuit would find that an arrest could satisfy the "stigma-plus" test. *See Carbone v. City of New Castle*, No. 2:15-cv-1175, 2016 WL 406291, at *5 n.3 (W.D. Pa. Feb. 3, 2016) (explaining that circuits are split on this issue). Perhaps an arrest *can* satisfy the "stigma-plus" test, but the Court will not reach that issue based on Plaintiff's argument that "there clearly was a loss of liberty as she was arrested." *See* ECF No. 38 at 33. If the Supreme Court wanted federal courts to apply such a simplistic "stigma-plus" theory, it would have held in *Paul v. Davis* that the plaintiff—whose charges were fully dropped after an arrest—satisfied the "stigma-plus" test.

Here, Plaintiff is in an even worse position than the plaintiff in *Paul v. Davis* because Plaintiff's arrest resulted in harassment convictions. An arrest supported by probable cause is not necessarily a deprivation of rights or status.[11] It cannot be argued that Plaintiff would not have been arrested absent the false allegations. The Superior Court found that sufficient evidence supported Plaintiff's harassment convictions, and none of the evidence cited by the Superior Court appears to be the same "evidence" that Plaintiff identifies as false or defamatory. *See Com. v. Spone*, 305 A.3d at 605–08. In other words, Plaintiff was lawfully arrested for harassment, and that lawful arrest cannot constitute the "plus" in a Fourteenth Amendment defamation claim.

Nor can the Court make a distinction between the nolle prossed cyber harassment charges

---

[11]     Plaintiff's sole cited case to support her argument is a Fifth Circuit case from 1980 that focused on an *unlawful* arrest. *See* ECF No. 38 at 33 (citing *Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980)). In *Marrero*, police and a prosecutor arrived to search the Marreros' store for stolen goods; local television media conveniently arrived at the same time as law enforcement and filmed the ordeal, and the prosecutor falsely told reporters that over $75,000 in stolen property had been seized. *Marrero*, 625 F.2d at 502. The Marreros were arrested, but all evidence was suppressed except for one bracelet, and no charges were ultimately pursued. *Id.* The Fifth Circuit found that the Marreros' arrest could constitute a "plus" that satisfied the stigma-plus test, but the Fifth Circuit emphasized that the arrest was *alleged to be unlawful. See id.* at 517, 519.

and the harassment convictions. The Complaint does not allege that Plaintiff was arrested more than once for the six total charges. Plaintiff does not allege that the nolle prossed cyber harassment charges caused some concrete deprivation of rights, liberty, or property that was independent from her harassment convictions.[12] The only distinction that Plaintiff has made between her nolle prossed cyber harassment charges and the harassment convictions is her belief that the cyber harassment charges were tied to the false deepfake allegations, and that therefore, they were far more harmful to her reputation than the harassment convictions. In Plaintiff's view, the false deepfake narrative wrongfully cast her as a child predator, and that reputational harm is far greater than any reputational harm that she could suffer from her harassment convictions. Even if the Court credits this theory, it is a theory of reputational harm that supports only the stigma prong of the stigma-plus test.

Additionally, the Court cannot credit Plaintiff's single unexplained comment that she can no longer be a counselor. *See* ECF No. 44 at 4. This was not mentioned in the Complaint in connection to Count II,[13] and it is unclear whether Plaintiff lost an existing job, or whether she complains of the loss of potential clients or the loss of future job opportunities.[14] But even if

---

[12]    There might be cases in which some criminal charges trigger greater pretrial restrictions than other charges. For instance, a prosecutor's office might have a policy of opposing pretrial release on any case involving first-degree murder charges, but the same office might not oppose pretrial release on lesser charges. Here, both the harassment convictions and the nolle prossed cyber harassment charges are graded as third-degree misdemeanors. *See* ECF No. 21, Ex A at 3 (criminal trial court docket, CP-09-CR-0002264-2021). Plaintiff has not pleaded that there would be any difference in her restriction of rights or liberties based on the different types of charges, and the Court is unaware of any difference.

[13]    In both Count I (fabricated evidence) and Count IV (state tort of defamation), Plaintiff mentions in passing that she "will never be able to work in her chosen field again, especially with minors." ECF No. 1 ¶¶ 126, 178.

[14]    This distinction raises further questions. The Third Circuit has held that the loss of potential clients or the loss of future job prospects are not sufficient to satisfy the "plus" requirement, at least absent demonstrations of concrete harm. *See Clark*, 890 F.2d at 620 (possible loss of future

Plaintiff amends her Complaint, it is unlikely that she could show that some concrete loss of counseling work is attributable *only* to the false deepfake allegations and *not* to the harassing text messages that a jury determined she sent about three teenagers.

Nevertheless, the Court will dismiss this Count without prejudice in the event that Plaintiff can amend her pleadings to meet the "stigma-plus" test. Perhaps there are unalleged facts that would sufficiently plead that the false deepfake allegations extinguished some right or status to which Plaintiff was previously entitled, and the harassment convictions would not have independently extinguished that right or status. For that reason, the Court dismisses Count II without prejudice and with leave to amend the Complaint.

### 2.    No Absolute Immunity for a Prosecutor's Press Statements

As a final note, the Court rejects DA Weintraub's claim of absolute prosecutorial immunity for any statements made to the press or during a press conference. *Cf.* ECF No. 21 at 4–5. "Talking to the press is, at best, only an administrative function," which is why the Third Circuit has held that a prosecutor may be entitled to qualified immunity but not absolute immunity for making false statements to the press. *Schrob v. Catterson*, 948 F.2d 1402, 1420–21 (3d Cir. 1991); *see also Pownall v. Krasner*, No. 22-4191, 2023 WL 3806354, at *7 (E.D. Pa. June 1, 2023). Should Plaintiff amend her Complaint, DA Weintraub is invited to renew any claims of qualified immunity. However, Count II is currently too vaguely pleaded for this Court to attempt a qualified immunity analysis.

---

employment opportunities is insufficient, absent evidence that plaintiff applied for another job and was rejected); *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir. 1987) (financial harm from loss of potential clients is insufficient). However, the Third Circuit has held that an "employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, [the plaintiff is a public employee who] lacks a property interest in the job." *Hill v. Borough of Kutztown*, 455 F.3d 225, 238 (3d Cir. 2006).

**C.** **Plaintiff Fails to State a *Monell* Claim (Count III)**

Count III of the Complaint asserts *Monell* liability (or municipal liability) claims against Defendants Hilltown Township and County of Bucks. However, a municipality cannot be liable under § 1983 for enabling or failing to prevent a constitutional violation if no underlying constitutional violation has occurred. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Vargas v. City of Philadelphia*, 783 F.3d 962, 974–75 (3d Cir. 2015). Accordingly, because, as detailed above, Plaintiff failed to articulate a constitutional violation, her *Monell* claim fails.

The Court will dismiss Count III without prejudice. However, the Court cautions Plaintiff to consider the following if she chooses to file an amended complaint. First, because Plaintiff's fabricated evidence claim is currently barred by *Heck*, it would be futile for her to attempt to raise a *Monell* claim based on fabricated evidence at this time. Second, the Court notes that the possible *Brady* claim Plaintiff introduced in her responses to the Motions to Dismiss (ECF No. 38 at 10, 13, 19, 24–26; ECF No. 40 at 1, 10, 19–23; ECF No. 40 at 10, 19–24), would also be barred under *Heck*.[15] Thus, any potential *Monell* claim could only be based on the sole remaining constitutional violation alleged: the Fourteenth Amendment defamation claim.

Moreover, in the unlikely event that Plaintiff manages to successfully plead a Fourteenth Amendment defamation claim, she will need to overhaul her *Monell* claim: First, she has failed to identify who the final policymakers are for Bucks County and Hilltown Township, which is required for her *Monell* claims. *See McTernan v. City of York, PA*, 564 F.3d 636, 658–59 (3d Cir. 2009) (failure to allege conduct by a municipal decisionmaker is "fatal" to a *Monell* claim). Second, her current *Monell* theories are premised upon faulty police investigations, not defamatory

---

[15]     As should be obvious from the discussion at Section III.A, *supra*, a § 1983 action is an inappropriate vehicle for *Brady* claims that have not yet been raised in state court or a timely habeas petition.

statements.[16] Third, Plaintiff's allegations based on her case alone are insufficient to plausibly allege that either municipality had a pattern, practice, or custom that enabled its employees' defamatory actions. Accordingly, this Count is dismissed without prejudice.

### D.   The Court Declines to Reach the State Law Claims (Counts IV & V)

Plaintiff's remaining claims are state law claims against all Defendants for defamation (Count IV) and invasion of privacy/false light (Count V). ECF No. 1 ¶¶ 169–82. Because the Court has dismissed Plaintiff's federal claims, the Court will not exercise supplemental jurisdiction over the state law claims.

Accordingly, the only independent basis for jurisdiction over these claims could be diversity jurisdiction, 28 U.S.C. § 1332(a), which requires a showing that "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." There must be minimal diversity between the parties, which means that "no plaintiff [may] be a citizen of the same state as any defendant." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (internal quotations and citation omitted).

Here, the Complaint pleads that Plaintiff and most of the Defendants are citizens of Pennsylvania. ECF No. 1 ¶¶ 1–5, 8, 12 (Plaintiff, Mr. Reiss, and the Himes are all Pennsylvania residents, and Hilltown Township and Bucks County are located in Pennsylvania). Thus, there is no complete diversity of citizenship, and by extension, Plaintiff has not met her burden of showing that the Court has subject matter jurisdiction over Plaintiff's state law claims. *See Lincoln Ben.*

---

[16]   This means that none of Plaintiff's *Monell* theories are pleaded as causally linked to defamation. For instance, it does not follow from a "policy, custom and/or practice of condoning and/or acquiescing in condoning false arrest and failure to remove and investigate officers charged with child pornography," ECF No. 1 ¶ 156, that Hilltown Township is liable for any defamatory actions of its employees. Even if Plaintiff's allegations about Hilltown's continued employment of Mr. Reiss are true, it does not logically follow from Hilltown Township's continued employment of someone who *possessed child pornography* that Hilltown Township implicitly or explicitly endorsed its police officers' acts of *defamation*.

*Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

Therefore, Counts IV and V are dismissed without prejudice.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the Motions to Dismiss filed by Defendant Reiss (ECF No. 20), DA Weintraub and County of Bucks (ECF No. 21), and Hilltown Detective Bell and Hilltown Township (ECF No. 22) as to the federal claims and deny as moot the Himes' Motion to Dismiss (ECF No. 13). As explained above, the Complaint is dismissed without prejudice. An appropriate Order will follow.

**BY THE COURT:**

_____
**HON. KAI N. SCOTT**
**United States District Court Judge**

22