**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAFFAELLA MARIE  SPONE | : |
| 104 Tartan Terrace | : |
| Chalfont, PA 18914 | :CIVIL ACTION |
|      PLAINTIFF | : |
|       v. | : |
| MATTHEW J.  REISS | : |
| 1034 Ziegler Road | : |
| Palm, PA 18070 | : |
| and | : NO.  2:23-cv-147- KNS |
| LOUIS BELL | : |
| 13 West Creamery Road | : |
| Hilltown, PA 18927 | : |
|     and | : |
| HILLTOWN TOWNSHIP | :   JURY TRIAL DEMANDED |
| 13 West Creamery Road | : |
| Hilltown, PA 18927 | : |
|     and | : |
| JENNIFER HIME and | : |
| MADELINE HIME | : |
| 124 Misty Meadow | : |
| Perkasie, PA 18944 | : |
|     and | : |
| MATTHEW WEINTRAUB | : |
| 100 N. Main Street | : |
| Doylestown, PA 18901 | : |
|     and | : |
| THE COUNTY OF BUCKS | : |
| 50 North Main Street, 1ˢᵗ Floor, | : |
| Doylestown, Pa. 18901 | : |
|     DEFENDANTS | : |

## AMENDED COMPLAINT

## I.    INTRODUCTION

Any prosecutor should be appalled at what tactics were used by Weintraub and

the police in this matter. In a case that sadly became a national media circus due to the

malicious, wanton, and irresponsible actions of Matthew Reiss, a now former police

officer, Loui Bell, Matthew Weintraub, and Jennifer Hime,  the Plaintiff was branded "a

child predator, criminal mastermind, and compared to Wanda Holloway, who was convicted of attempting to hire a hitman to kill the mother of her daughter's junior high school cheerleading rival.

Reiss, along with Louis Bell of the Hilltown Township police, filed a false Affidavit of Probable Cause to obtain a search warrant that falsely swore under penalties of perjury that Plaintiff cyberharassed "minors" by using her IPhone 8 to make a deepfake video, altering social media accounts to make minors appear nude, and sending death threats directly to the minors.

Knowing that there was no such evidence of the above, Reiss and Bell then obtained an arrest warrant which repeated the same false allegations, lacked probable cause which any reasonable policeman knew or would have known, and which was used to arrest Plaintiff for the crime of cyberharassment of a child. Reiss and Bell were the initial fabricators of the so-called evidence, and after Plaintiff's arrest, conveyed to Weintraub that the false evidence existed which was then used by Weintraub to create a hate and smear campaign against Plaintiff as a child predator prior to her trial.

Because of the intentional, outlandish, and false cyberharassment allegations *manufactured* by Reiss and Bell and exploited by Weintraub *who knew they were false*, Plaintiff was branded "Deadly Cheer Mom" in the news, compared to Wanda Holloway,[1] received death threats and could not obtain employment. Ironically, Weintraub knew that

---

[1] Holloway was convicted of attempting to hire a hitman to kill the mother of her daughter's junior high school cheerleading rival.

when he was making child predator claims to the press, Reiss was under investigation as the actual predator.[2]

In order to bolster his re-election campaign, Weintraub went on a press tour on such news programs as *Good Morning America* and the *Today Show*, and told the nation "without question" that the Plaintiff used deepfake technology to target minors, made nudes of them, and directly texted them messages that said "you should kill yourself" when Weintraub knew no such evidence existed. Weintraub then embellished his false remarks by telling the press that Plaintiff wanted to slut shame" the alleged minors, and that she preyed on juveniles.

Weintraub and the police, after two years of false statements to the press which ruined Plaintiff's reputation, caused over 3,000 articles to be published on the Internet, caused Plaintiff to lose her job and property, and caused Plaintiff to receive death threats for "preying" on children, finally admitted that no such evidence existed. Moreover, the police and Weintraub knew that it was one of the minors that was selling nude images of herself *with her mother's knowledge* and the police did nothing.  The same  mother admitted to Bell that she had destroyed evidence and was willing to pay someone to come up with evidence against Plaintiff.  Again, Weintraub and the police did nothing and failed to disclose this to Plaintiff. Immediately after Weintraub's phony press conference, Sherri Ratel, mother of one of the alleged minors who was actually and adult, told Weintraub's associate, Assistant District Attorney Julia Wilkins that everything that Weintraub told the press  regarding her daughter Kayla was false.  Not only did

---

[2] Reiss ultimately pled guilty to felony counts of  child pornography.
https://northpennnow.com/former-hilltown-police-officer-pleads-guilty-to-possession-of-child-pornogr-p6643-176.htm

Weintraub fail to disclose this call and admission, thus committing one of his many *Brady* violations, but he continued to repeat the same false allegations regarding Ms. Ratel's daughter to the press for two more years.

Bell falsely testified at Plaintiff's Preliminary Hearing which caused Plaintiff to be held over for trial on the crime of Cyberharassment.  Weintraub's office and the police then allowed the false evidence to continue to the day of Plaintiff's trial in March of 2022.  Bell then threatened Plaintiff's counsel on the first day of trial that if Plaintiff defended against the cyberharassment charges, that Bell would find other evidence against Plaintiff and prosecute Plaintiff further.   When Plaintiff's counsel told Bell to "pound sand", Weintraub *nolle pressed* the cyberharassment charges, but then, incredibly, used the false cyberhassment allegations at Plaintiff's trial knowing that they were false.

## II.    FACTUAL BACKGROUND

### A.    THE PARTIES AND VENUE

1.    Plaintiff Raffaella Plaintiff ("Plaintiff") is an adult individual who resides at 104 Tartan Terrace, Chalfont, PA 18914

2.    Matthew Reiss ("Reiss") is an adult individual who resides at 1034 Ziegler Road, Palm, PA 18070.

3.    Louis Bell ("Bell") is currently employed as a police officer with the Hilltown Township Police at 13 West Creamery Road, Hilltown, PA 18927.

4.    Reiss and Bell were at all material times officers with the Hilltown Township Police Department, and are being sued in their individual and official capacities as an officer, agent, and/or employee of the defendant, Hilltown Township.

5.    Hilltown Township all times relevant herein was a political subdivision organized and existing under the Pennsylvania Second Class Township Code, 53 P.S. §§ 65101 et seq., with offices at 13 W Creamery Rd, Hilltown Township, PA 18927.

6.    At all material times, Reiss and Bell acted within the course and scope of their employment, under color of state law and pursuant to the customs, policies and practices the defendant, Hilltown Township.

7.    At all material times, defendant, Hilltown Township was charged with the responsibility of testing, hiring, training and supervising members of the Police Department including in particular Reiss and Bell.

8.    Madeline Hime ("Hime") is an adult who resides with her mother Jennifer Hime ("Jennifer Hime") at 124 Misty Meadow, Perkasie, PA.

9.    Hime was a minor at the time Plaintiff was accused of cyberbullying her.

10.    Matthew Weintraub was the District Attorney of Bucks County, and was responsible, solely or in concert with the other defendants, responsible for the false and defamatory statements giving rise to this action. Weintraub  is being sued in his individual and official capacities.

11.    The County of Bucks ("Bucks") is a county government entity located in the Commonwealth of Pennsylvania with an address of 50 North Main Street, 1st Floor, Doylestown, Pa. 18901, and c/o Solicitor's Office, 55 East Court Street, Doylestown, PA 18901,which is located in this judicial district. Bucks employs more than 50 people.

12.    At all material times,  Weintraub was acting as agent, servant and/or employee of Bucks under the County's control or right to control.

13.     At all times material hereto, Reiss, Bell and Weintraub were acting in concert with one or all of the defendants and during the course of their employment under color of state law.

14.     At all times material hereto, Reiss, Bell and Weintraub were acting intentionally, maliciously and in concert with one another in reckless and deliberate disregard for Plaintiff's federal and state constitutional rights.

15.     At all times material hereto, Hilltown Township and Bucks County acted or failed to act through Reiss and Weintraub, and who were deliberately indifferent to the violations of Plaintiff's federal and state constitutional rights.

16.     Sherri Ratel and her daughter, Kayla Ratel ("Kayla") are non-parties to this suit.  Kayla was one of the alleged minors that Plaintiff was accused of harassing.

17.     Jurisdiction over the parties in the Eastern District of Pennsylvania is proper pursuant to the provisions of 28 U.S.C. §1220, 28 U.S.C. §1331 and 28 U.S.C. § 1343.

18.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b)(1) and (2).

**B.     THE FALSE AFFIDAVITS OF PROBABLE CAUSE AND ARREST**

19.     Jennifer Hime contacted Hilltown Police, the exact date unknown, and told Reiss that Plaintiff had altered a video of her daughter to make it appear that she was vaping. Also, Jennifer Hime claimed that her daughter had received direct messages that included pictures from Hime's social media accounts such as Tik Tok which had been doctored to make her look as if she was naked, drinking alcohol or vaping,[3] and that her

---

[3] NBC10 Philadelphia, Rudy Chincilla 3/15/2021

daughter received texts and voice messages that stated that her daughter should kill herself.

20.    Similarly, Jennifer Hime, who told police that she was acting for Ratel and who was not a minor at the time of the alleged incidents, told Reiss that someone had sent Kayla similar altered images of Kayla in bikinis, with the message saying that Kayla was drinking and smoking, and that Kayla's Tik Tok account had been altered to say "attentionwhOre69".

21.    Neither Reiss nor Bell, who was the detective assigned to the case, ever asked Jennifer Hime to actually see her daughter's phone to verify what she reported to the police and never told Jennifer Hime to preserve any such evidence.

22.    Acting on Jennifer Hime's false statements, Reiss signed an Affidavit of Probable Cause which was approved by Bell in order to obtain a search warrant against Plaintiff.  At the time, Reiss knew that the allegations were false, yet the Affidavit falsely swore under penalties of perjury that Plaintiff had communicated directly with the minors[4] and *inter alia*:

   a.    Directly sent Hime texts and voice messages that said "you should kill yourself";

   b.    That Hime's social media accounts were "doctored to make it appear that she was "nude, drinking alcohol or vaping";

   c.    That Plaintiff doctored a video showing Hime vaping using "deepfakes"

23.    Bell was absolutely complicit in the fabrication of the false charges as he approved and participated in the false Affidavit, although he later tried to distance

---

[4] Kayla was not a minor.

himself from Reiss after the latter's disgraceful arrest for possession of child

pornography. The Affidavits clearly stated:

> 3. The facts of this investigation were gathered by your affiant, Officer
> Christopher Ferry, and Detective Louis Bell, all of which are currently
> employed by the Hilltown Township Police Department and have all been
> with this department for over 17 years.[5]

24.     On December 18, 2020, Reiss and Bell seized every electronic device

from Plaintiff's home.  Therefore, police knew that as early as this date that not one of

the seized devices, including Plaintiff's Iphone 8, had any evidence of the false

allegations in Paragraph 22 above.

25.     Reiss and Bell without a shred of proof and knowing that there was no

evidence whatsoever of the false cyberharassment allegations, filed an Affidavit of

Probable Cause used to obtain an arrest warrant for Plaintiff.  The Criminal Complaint

falsely charged Plaintiff, *inter alia,* with three counts of Cyber Harassment of a Child, 18

Pa. C.S.A. 2709 (a.1)1(i) for sending the altered videos, nudes and death threats directly

to Hime and Ratel while they were minors.

26.     Reiss and Bell completely manufactured the cyberhassment charges by

falsely swearing under penalties of perjury that Plaintiff deepfaked videos of the minors,

altered social media accounts of the minors to make them appear nude, and directly sent

threats to the minors. Moreover, Kayla was an adult and not a minor.

27.     Reiss and Bell knew that no such  evidence of the above existed when they

falsely charged Plaintiff with cyberharassment of minors, as admitted by Bell at trial.

---

[5] Affidavit of Probable Cause 12/18/2020

28.     No probable cause or even arguable probable cause existed to file the criminal charges against the Plaintiff and to arrest her for the crime of cyberharassment, nor did Reiss and Bell possess a reasonable belief that probable cause or arguable probable cause existed

29.     Defendants Reiss and Bell initiated the criminal proceedings and maliciously continued the proceedings against the Plaintiff, without probable cause.

30.     Bell then falsely testified at Plaintiff's Preliminary Hearing that this evidence existed when he knew that he had no such evidence.  Because of Bell's false Affidavits and false testimony and the fabricated cyberharassment evidence he claimed that he had when it never existed, Plaintiff was held for trial on the cyberharassment charges.

### C.     WEINTRAUB'S MALICIOUS, FALSE, SCANDALOUS AND DEFAMATORY PRESS STATEMENTS

31.     Following Plaintiff's arrest and preliminary hearing wherein Bell falsely testified, Bell forwarded the false evidence of the cyberharassment to Weintraub.

32.     Weintraub, who was up for re-election, immediately held a press conference at the Bucks County Courthouse.

33.     Weintraub, knowing that Plaintiff had a minor daughter[6], proceeded to tell the press that he was going to email the press the criminal complaint and disclosed to the press Plaintiff's specific home address during the new conference.[7]  Weintraub then linked Plaintiff's criminal complaint to his District Attorney webpage.

---

[6] Press Conference March 15, 2021  :59
[7] Press Conference 5:58

34.     Weintraub obviously had no concern for Plaintiff's minor daughter or for the veracity of the accusations.  Subsequent to the press conference, news stations such as Fox 29 and 69 News banged on Plaintiff's door with full camera crew. Plaintiff then began receiving threats posted on social media some of which threatened bodily harm to Plaintiff.

35.     During his press conference, Weintraub made the following statements based on the false evidence of cyberharassment that Bell forwarded:

- That at the time of their "victimization", the alleged victims were all minors[8], when they were not[9]

- That Jennifer Hime said her daughter received phone calls and texts that told Hime "you should kill yourself"[10]  Weintraub specifically emphasized that this was in quotes, ***stating it as a matter of fact***

- That photos were taken from Hime's own social media and were edited by Plaintiff to make it appear that Hime was drinking, vaping and that a bathing suit that she was wearing was edited and replaced with a skin tone color in order to make Hime appear nude[11]

---

[8] "the victims . . . were all minors . . . at the time of their victimization." Bucks County District Attorney, Bucks County DA Holds News Conference in Cyberbullying Case, YouTube (Mar. 15, 2021), https://www.youtube.com/watch?v=-AUW-nKWKu0&t=20s
[9] Press Conference 1:10. During his press conference, Weintraub asserted, "the victims . . . were all minors . . . at the time of their victimization." Bucks County District Attorney, Bucks County DA Holds News Conference in Cyberbullying Case, YouTube (Mar. 15, 2021), https://www.youtube.com/watch?v=-AUW-nKWKu0&t=20s.
[10] Press Conference 3:21
[11] Press Conference 3:45

- That in Ratel's case, that Plaintiff altered Ratel's social media screen name to "attentionwhOre69"[12]

- Weintraub stated that all of "these", obviously referring to the postings by these alleged victims on their own social media accounts, were "deepfakes"[13]

36. Weintraub claimed the police viewed the video of Hime vaping or appearing to vape and other photographs "and found them to be what we now know to be deepfakes." *Id.* at 4:10. He further referenced the messages alerting Ratel's parents to her Tik Tok account name, drinking and smoking, calling "none of this . . . accurate or material, frankly. Weintraub said they were all altered and shown and seen as deepfakes." *Id.* at 5:09.

> Weintraub further told the press that: This tech is now available to anyone with a smart phone. Your neighbor down the street, somebody who holds a grudge. We just have no way of knowing. This is prevalent. This is also… and this is one of my preeminent concerns…this is also another way for an adult to prey on children, as is the case of the allegations in this instance…. This is…the first incident…where we have an adult with specific intent, preying on juveniles through the use of this deepfake technology.

Press Conference at 6:29.

37. When Weintraub maliciously and falsely stated that Plaintiff preyed on juveniles, he knew or should have known that Ratel was an adult, there was  no evidence that the video was a deepfake, and neither Weintraub nor the police had ever looked at any of the alleged minors' phones to determine whether there were any altered nudes or threats from Plaintiff.

---

[12] Press Conference 5:16
[13] Press Conference 5:26

38.     In response to a question about the effect on the victims of the "pretty

vicious . . . cyberbullying," he expressed that, "People feel very safe in their space, and

now people's space includes cyberspace. As this example very starkly points out to us,

we're not safe in cyberspace. Anybody can grab any image that we put out there. They

can manipulate it to look unseemly . . . ." Press Conference at 13:01

39.     Weintraub then explained that the police were able to "look behind the

curtain" and "connect the dots" to determine the videos and images were fake. Press

Conference at 16:07.  **This was completely false.**

###     C.     RATEL INFORMS WEINTRAUB OF HIS FALSE STATEMENTS

40.     Immediately after the press conference, Sherri Ratel, mother of Kayla,

called Julia Wilkins, the Assistant District Attorney ("ADA") that stood next to

Weintraub at the press conference, and told him that everything he said about Kayla to

the press was false.  See Affidavit of Sherri Ratel at **Exhibit "A"**.

41.     Not once did Weintraub disclose the call or this exculpatory evidence to

Plaintiff thus committing one of his numerous *Brady*[14] violations which continued

throughout the criminal case and got worse.  The Ratel Affidavit states in part:

> "We were shocked because during the press conference that Weintraub made the
> following statements:
>
> o     That at the time of their "victimization", the alleged victims were
>       all minors.  (That was false as Kayla was not a minor).
>
> o     That Spone had altered Kayla's social media screen name to
>       "attentionwhOre69". Weintraub stated that none of this was
>       accurate. (That was false as it was in fact Kayla's screen name).

---

[14] *Brady v. Maryland*, 373 U.S. 83 (1963).

    o  That Spone altered social media accounts of Kayla, referring to Spone using "deepfakes" to alter the accounts. (Nothing was altered).

    o  That Reiss deserved credit for a "very thorough and lengthy investigation. (Sherri and Kayla stated that no police officer had spoken to them, interviewed them, or took any of their statements).

    o  That this case was all about Spone using deepfake technology to prey on juvenile victims. (That was false as Spone was not preying on Kayla. Nothing was sent to Kayla, nothing was altered, nothing was threatening, and Kayla was not a minor.

See, Ratel Affidavit at **Exhibit "A"**

  **D.  WEINTRAUB CONTINUES TO MAKE FALSE AND DEFAMATORY PRESS STATEMENTS**

   42.  Despite Ratel directly informing Weintraub's of his false press statements, Weintraub failed to correct or to retract them. Moreover, ADA Wilkins failed to disclose to Plaintiff's counsel the phone conversation that she had with Ratel.

   43.  Weintraub then appeared on further news outlets such as *Good Morning America* and specifically stated on national news that the "deepfake video" of Hime vaping was done by Plaintiff in an effort to get them "knocked off" a cheerleading team. On *Fox News*, Weintraub incomprehensibly claimed that "we take it as gospel that a picture is a picture and a video is a video", again referring to Plaintiff deepfaking the vaping video of Hime. Weintraub further asserted that pictures of the minors were altered.

   44.  Weintraub, by smugly, falsely, and arrogantly claiming on the news and to the newspapers that Plaintiff was preying on juveniles through the use of this deepfake technology, caused the *Today Show* to state on National News that the community demanded justice against Plaintiff.

45.     Weintraub further made press statements such as the below to 3CBS:

"Our allegation is that [Plaintiff] took existing images from existing social media — from these three victims' existing social media accounts — and manipulated them," District Attorney Matt Weintraub said.[15]

46.     Weintraub's false claims to the press included:

- It was Plaintiff's intent to "slut shame" these minors.

- that Plaintiff was arrested as the result of a very thorough and lengthy investigation. Press Conference, at 1:45.

- that Plaintiff via texts or calls directly to the victims told them "you should kill yourselves" (*Id*. at 3:26).

- That Plaintiff took photos from Hime's social media accounts and modified them to show her drinking, vaping, and nude with a bathing suit edited out and replaced with skin tone but "no genitalia showing"; that police reviewed the images and found them to be "deep fakes" "by looking behind the curtain" and using metadata;

- that Plaintiff captured pictures of the three victims and provided them with offensive labels including falsely stating Kayla was using "AttentionWhore69" as a screen name"; and, that a search warrant at Plaintiff's home determined that she used her call phone to manipulate media and create the "deep fakes," which is the crux of this case." Press Conference at 3:26-6:10.

---

[15] https://philadelphia.cbslocal.com/2021/03/15/raffaela-Plaintiff-of-bucks-county-accused-of-cyberbullying-making-deepfakes-of-3-teen-cheerleaders/

47.    Weintraub made these public statements to make it look like Plaintiff was clearly guilty.

48.    In fact, Jennifer Hime testified that the "androgynous nude" photo that Weintraub told the press was made and disseminated by Plaintiff was actually sent to Jennifer Hime's daughter by someone Jennifer Hime knew – not by Plaintiff.

49.    Weintraub's false statements caused a national media circus about deepfake technology which falsely targeted Plaintiff.  Beginning on March 12, 2021, based on Weintraub's false statements to the press, numerous articles were published in local, national, and international news. See, e.g., Vinny Vella, A Bucks County Woman Created 'Deepfake' Videos To Harass Rivals on Her Daughter's Cheerleading Squad, DA Says, Philadelphia Inquirer, Mar. 12, 2021; Elizabeth Elizalde, PA Mom Sent Deepfakes of Daughter's Cheerleading Rivals to Coaches: DA, NY Post, Mar. 13, 2021; Christina Morales, Pennsylvania Woman Accused of Using Deepfake Technology To Harass Cheerleaders, NY Times, Mar. 14, 2021; Megan Sheets & Andrew Court, Cheerleader, 17, Reveals 'Deepfake' Smear Video That Rival's Mother Made of Her Vaping and Says She Feared No One Would Believe It Wasn't Real: Woman, 50, Arrested for 'Cyber Harassment', DailyMail.com, Mar. 15, 2021. Bucks County's own District Attorney News posted its own story on May 14, 2021, after Appellant's preliminary hearing. Chalfont Woman Ordered To Face Trial for Cyber Harassing Three Teens on Daughter's Cheer Squad, District Attorney News (May 14, 2021), https://www.buckscounty.gov/CivicAlerts.aspx?AID=48. This was posted even though the District Attorney knew by the preliminary hearing that police had been unable to confirm any of the videos were falsified. See Christopher Dornblaser, DA: 'Deepfake'

Technology Might Not Have Been Used in Bucks Cheerleading Harassment Case, Bucks

County Courier Times (May 14, 2021),

https://www.buckscountycouriertimes.com/story/news/2021/05/14/da-chalfont-woman-

may-not-have-used-deepfake-tech-harassment-vipers-cheerleading/4992798001/.

50.    Following Weintraub's false allegations about the deepfakes, nudes and

death threats, Plaintiff gained a national reputation with the news referring to her as

"Cheer Mom". Twitch called her a "criminal mastermind".  A simple Google search of

Plaintiff produced thousands of articles.  This story has appeared, and  continued to

appear, on almost every major news program in America including, Good Morning

America, the Today Show, CNN, NBC, ABC, CBS, Fox News, People Magazine, Sports

Illustrated, the Philadelphia Inquirer, the New York Times, the Washington Post, Inside

Edition, KYW, and international news in the U.K. (BBC), Japan, and Australia.

51.     Weintraub never corrected or retracted the false cyberharassment charges

and continued to press them to the day of trial in 2022.

52.    Weintraub also knew that Hilltown police vis a vis Reiss and Bell had

done an inadequate investigation into cyberharassment, and overstepped his bounds as

the District Attorney.  Knowing that Reiss was compromised and disgraced, no

investigation was done into where the nudes came from or why Reiss had Hime's

personal passwords to her social media accounts.  No investigation was done as to why

the police allowed Hime to dispose of her phone.

53.    Weintraub also knew from his own County Detective who admitted to

Plaintiff right before Plaintiff's trial that there was no evidence of deepfake technology.

Yet, Weintraub continued his false narrative to the press and at trial.

54.    In such cases, it is common practice and custom for a District Attorney to obtain a complete and thorough investigation.

55.    Instead, Weintraub relied on Reiss, a disgraced police officer under investigation for child pornography to obtain an arrest warrant for Plaintiff for cyberharassment with essentially no investigation and no training in deepfake technology.  In every sense, Weintraub relied upon his faulty investigation to recklessly pursue false cyberharassment charges against Plaintiff for his political gain.

56.    Weintraub made these false claims to the press which endangered Plaintiff's life, caused her to lose her job and prevented her from employment, and violated Weintraub's oaths as an attorney, a prosecutor, and District Attorney, all for selfish political gain.

57.    Weintraub's false and defamatory statements made in press conferences and in furtherance of his political ambitions outlined herein constitute clear violations of his oath of office; Weintraub's actions in condemning Plaintiff as someone who "preys" on children, who makes nudes of them, who alters social media accounts of minors, publicly without cause and making false accusations of wrongdoing as outlined herein constitute clear violations of his oath of office *and does not shield him with immunity*.

58.    At the press conference and then in television interviews, Weintraub exceeded the duties of an elected district attorney by making improper statements concerning evidence, made false statements concerning evidence which he knew, should have known, or through reasonable effort would have known were false, and provided a public forum to defame the Plaintiff, portray her in a false light, and damage her personal and professional reputation.

59.    Indeed, Pennsylvania Rule of Professional Conduct 3.6(a) provides that "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

60.    Weintraub's actions at the press conference and in press statements did not serve any legitimate purpose consistent with his sworn duties as the elected district attorney, did not advance the criminal case against Plaintiff *except in the press*, and were perpetrated with actual malice in a brazen, bold, and desperate effort to advance his political career, as he sought reelection.

61.    Weintraub exceeded the duties of an elected district attorney by making improper statements concerning the evidence, made false statements concerning the evidence which he knew, should have known, or through reasonable effort would have known were false, and provided a public forum for Hime, who took to Tik Tok to publicly humiliate and falsely accuse Plaintiff of making fake videos, nudes and threats, and to portray Plaintiff in a false light, and damage her personal and professional reputation.

62.    Weintraub spread  inflammatory, guilt-ridden language across news platforms far and wide to convince as many Bucks County voters and potential jurors of both Plaintiff's presumed guilt in targeting and making deepfakes against minors.

63.    In the week before Plaintiff's trial, news surrounding her case resumed with announcements of a thriller movie titled <u>Deadly Cheer Mom</u> being made inspired by

the true story of Raffaela Spone. See TooFab Staff, supra. Taken together, the national

atmosphere fed by Weintraub was hostile and pervasive.

64.     By waiting until the first day of trial to dismiss the cyberharassment

charges which Weintraub and the police had known for a year were inapplicable in an

effort to obtain a guilty plea, acted with a flagrant abuse of discretion. To combat the

inapplicable charges and refute the deepfakes, Plaintiff was forced to hire an unnecessary

expert, when she could have been preparing to combat only the harassment charges

which were ultimately pursued.

65.     Shockingly, despite the fact that Weintraub ultimately conceded at trial

that Plaintiff did not deep fake anything, and that none of the allegations broadcast during

the press conference were borne out at trial, Weintraub left the press conference video on

the District Attorney's Youtube site, where Plaintiff pointed out to the trial Judge that it

was still live. Yet, at the time the original Complaint in this matter was filed, Weintraub's

defamatory statements regarding the cyberharassment remained live on his Youtube

channel.

> **D.**     **HIME CONTINUED TO MAKE FALSE STATEMENTS TO THE
> PRESS AND THEN ADMITTED TO DESTROYING AND
> CONCEALING EVIDENCE WHICH WEINTRAUB AND THE
> POLICE FAILED TO DISCLOSE**

66.     Similar to Weintraub, Jennifer Hime and Hime appeared on news

programs such as *Good Morning America* and *Inside Edition* and stated that the vaping

video was faked.

19

67.     Hime told 6ABC news that she endured threatening messages for months. Hime again stated on 6ABC news that the vaping video was faked.[16] Jennifer Hime said she "believed her daughter" knowing that this was false and that she had destroyed and withheld evidence.

68.     Hime spoke to *Sports Illustrated* and stated "she'd  never before vaped, consumed alcohol or posed nude.17  Jennifer Hime also told *Sports Illustrated* that she let her daughter. know  by going to the police that she believed her— and that that she, too, was convinced this was the handiwork of a crafty, frightening cyberbully," referring to Plaintiff.[18]

69.     Demand after demand to Weintraub's office and the police to allow Plaintiff's expert technology company to view Hime's phone was met with radio silence.

70.     Only after threatening Court intervention did Weintraub eventually allow Plaintiff access to the so-called "evidence".

71.     When Plaintiff's expert viewed the phones of Jennifer Hime and Hime, it was discovered that their original phones had been disposed of, and Reiss, Bell and Weintraub knew this at least a year before Plaintiff's trial. They intentionally failed to disclose this to Plaintiff.

72.     Moreover, what was on the phones was not the work of a "crafty cyberbully", but a crafty Jennifer and Madeline Hime.  The phones revealed:

- that not one image of Hime had been altered.

---

[16] Yahoo News, Cheerleader's mom created deepfake videos to allegedly harass her daughter's rivals, 5/3/2021
17 *Sports Illustrated,* "The Mother of All Deepfakes", May 12, 2021
[18] *Id.*

- In email communications between Jennifer Hime and Sheri Ratel, it was admitted that Ratel herself made the so called gingerbread house with "strip club" written over it which they falsely accused Plaintiff of doing

- That Hime had a Tinder account, known as "mads956" which is age restricted for 18 and older. At the time when Hime was a minor, and with the police and Weintraub's knowledge, Hime publicly stated that she sells images of herself to "sugardaddies" on Tinder.

- That Jennifer Hime had admitted to police long before Plaintiff's trial that it was her daughter making and selling nudes of herself

- That Jennifer Hime was buying marijuana for her daughter while claiming on national news that her daughter does not vape

- There Hime had posted on her social media account pictures of herself vaping

73.    The withheld evidence further revealed that Jennifer Hime was in negotiations with a film company to produce a film containing the lies about Plaintiff deepfaking videos:

> "I'm also working with another producer who, big surprise, wants to turn the story into a lifetime style movie. He actually was the producer of A League of their own. He is pitching to some networks tomorrow. That would be more anonymous as it would be based on true events but that would be something that would be financially compensated. Basically we would be paid for the story itself.  We have not been asked to sign anything for that yet."

> ***

> Dear Jennifer,
> On behalf of Free Range Media and Critical Content, attached is a Talent Hold Agreement for you and Madi in connection with the "Untitled Cheerleader Deepfake Project."  Please review when you have a chance and

let us know if you have any questions or concerns.  Should everything appear satisfactory, you can sign and return to my attention.  I will arrange for counter signature and return a fully executed copy for your records. Looking forward to working together.

74.    The withheld evidence showed that Jennifer Hime was coaxing Sherri Ratel to have someone from Victory Vipers to come up with some evidence against Plaintiff and offering the person a gift card.

75.    The police and Weintraub knew that Jennifer Hime had admitted in a text to Sherri Ratel that she had withheld damaging evidence from the "cops" and they never did anything about it and continued to conceal it from Plaintiff.

76.    Plaintiff discovered that Hime created a "gofundme" that stated falsely:



77.    Hime posted a Tik Tok video where she is laughing and pointing at herself while a news reporter is telling the story of Plaintiff creating deepfake videos and telling

them to kill themselves. Hime also posted about how the *Today Show* should pay her for her interview.

78.    In another Tik Tok, Hime falsely stated that she was cyberstalked and harrassed "since April of 2020"  referring to Plaintiff and calls Plaintiff "dumb" in another post.

79.    Hime bragged on Tik Tok with the caption "my life's a movie" about being interviewed on *Good Morning America* where she stated that the vaping video was fake.

80.    The Ratel Affidavit confirms that Hime was posting defamatory statements about Plaintiff and that she was deleting accounts.  See **Exhibit "A"**

81.    The Hilltown police and especially Reiss continued to falsely comment about the alleged creation of true deepfakes by Plaintiff such as a Daily Dot interview on April 8, 2021, interview written by the *Daily Dot:*[19]

> But after contacting Reiss, the officer who investigated Spone, the Daily Dot learned that police never actually obtained the original vaping video. Instead, like what was seen on NBC News, police only had access to a cellphone recording taken by Spone of the vaping video being played on a separate device. Any metadata analysis would therefore fail to include information on the source video.
>
> In response to questions on how it could have been determined that the vaping footage was manipulated without access to the original video, Reiss argued that he could see with his "naked eye" elements that "don't make sense."
>
> "The source of where Mrs. Spone came up with that video is still a question," Reiss said. "And we hope that Mrs. Spone during the course of the preliminary hearing or trial will enlighten us as far as what her source and intent was."

---

[19]  This is only an excerpt of the entire article, which has not been attached because it printed the alleged victim's photos.

Reiss stated definitively that "artificial intelligence was used" in the photos that made several cheerleaders appear nude,…[20]

82.    Reiss was clearly exceeded his duties as a patrolman by attempting to blatantly coerce Plaintiff into explaining how she deepfaked videos, when there was no such evidence, by trying to shame her in the press and try the case in the press.

83.    Hilltown Township knew that Reiss had no training in deepfake technology and was the defendant in two prior civil rights suits filed against him. Hilltown Township and the police also knew that Reiss was under investigation for collecting child pornography, including images of children under the age of 13 being sexually assaulted.[21]

84.    Weintraub made a statement that all of Reiss' cases would be evaluated but did nothing about the false allegations against Plaintiff.

85.    After Reiss' arrest for child pornography, Hime posted on Tik Tok "to the man i thought i could trust", referring to Reiss.  The police knew about the posts, yet Reiss was never removed from Plaintiff's case and Weintraub showed no concern.

86.    It is believed and therefore averred that there are more defamatory statements about Plaintiff in Hime's deleted accounts. Jennifer Hime claimed that her

---

[20] https://www.dailydot.com/debug/deepfake-vaping-video-cheerleaders/
[21] The investigation received 660 images, which included 10 images
that were of child pornography, depicting children under the age of 13 in various stages of undress, in sexual poses and being sexually assaulted," the news release said. "As part of the search warrant, chats were also provided to investigators." "In one chat, the defendant notes that he works for a local government entity," the District Attorney added. Source:: https://sauconsource.com/2021/05/26/police-dept-angered-shocked-cop-charged-with-child-porn/

daughter deleted evidence because her daughter was afraid that she would be told to stay off social media.

87.    Hime confirmed to Bell that she had created a timeline for Reiss. This timeline included Jennifer Hime's admission that Hime was in fact altering pictures of herself to make herself appear nude and selling them to men on Tinder. The police did nothing.

### E.    WEINTRAUB USES THE ADMITTEDLY FALSE CYBERHARASSMENT "EVIDENCE" MANUFACTURED BY REISS, BELL AND HIME AT TRIAL

88.    Up until the first day of Plaintiff's trial, Weintraub, Reiss and Bell continued to charge Plaintiff with Cyberharassment of minors.

89.    On the first day of trial, ADA Wilkins and Bell attempted to strong arm Plaintiff into dropping her defense.  When Plaintiff refused, Weintraub *nolle prossed* the Cyberharassent charges after continuing the false narrative in the press fand in the Court for almost two years:

> THE COURT: All right. And, Mr. Birch, it's my understanding that you were made aware of that this morning, am I right?
> MR. BIRCH: That's correct, Your Honor.[22]

90.    After Plaintiff told ADA Wilkins and Bell to "pound sand" and that she was not going to be intimidated, ADA Wilkins and Bell in retaliation attempted to find some other incriminating evidence against Plaintiff to use at trial:

> MS. WILKINS: Yes, but Your Honor, could we be seen at sidebar briefly?
> THE COURT: On or off the record?
> MS. WILKINS: On the record.
>       ***
> MS. WILKINS: Your Honor, there was some evidence from the phone, from defendant's phone, that we were able to find this weekend -- last

---

[22] Transcript 3/21/2022 at pgs. 11-12:

weekend while conducting searches again, just checking over everything. I notified counsel Monday morning when we found this information, when it was provided to me, about what it was.

      \*\*\*

THE COURT: Come on.

MR. BIRCH: Your Honor, when I heard this, I know that there are plenty of cases out there that talks about retaliation, number one. I have intentionally scrubbed this, I didn't bring in Jennifer Hime's conduct about knowing that her daughter was selling nudes on Tinder.

\*\*\*

THE COURT: -- to suggest that on Monday you would disclose this to the defense. And, by the way, on Monday finally announce you're withdrawing the other charges. That's enough surprise for the defense to have to deal with.
So the idea that you're going to -- Landamia's testimony is not relevant at this juncture. They can continue to argue this. If the defendant takes the stand, then I have to look at the case law about whether or not a potential investigation -- she hasn't been charged.[23]

91.    Weintraub, Reiss and Bell knew full well that extrinsic evidence of specific instances of conduct is inadmissible to attack a witness's character for truthfulness. More importantly, a witness's character for truthfulness may not be attacked on cross-examination concerning specific instances of conduct. Therefore, the threats that testifying would be "fraught with danger" was erroneous, and Plaintiff was deprived of her right to decide knowingly and voluntarily to testify in her own defense[24].

92.    ADA Wilkins, acting on Weintraub's "orders" specifically put into evidence the same false  exhibits that Weintraub claimed was doctored by Plaintiff, and in which Weintraub knew were not doctored, to secure a conviction.  For example, the

---

[23] Transcript Thursday March 24, 2022, pgs. 122- 125.
[24] Under Pa.R.E. 608(1), "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct." Testimony from Detective Landamia regarding a witness's dishonest act is inadmissible extrinsic evidence that is inadmissible to attack her character for truthfulness under Rule 608(1).

so-called nude of Madeline Hime (Madeline") used at trial was in fact created by

Madeline's friend and sent to Madeline by this friend:

> BY MR. BIRCH:
> Q. Okay. If I showed you the picture, would you recognize it?
> A.Yes. Yes, that's the picture.
> Q. Okay. Do you know what account that came from?
> A.  It came from somebody named Skylar.
> Q. I apologize.
> A. Uh-huh.
> Q. It appeared to me -- correct me if I'm wrong -- it appeared to be a Snapchat account.
> A. Possibly.
> Q. Does your daughter have a Snapchat account?
> A. She does.
> Q. Okay. And do you know the person named "Skylar"?
> A.  My daughter knows somebody named Skylar. I do not know her personally.[25]

93.    Weintraub also introduced Commonwealth's Exhibit C-4, which was the

same exhibit that Reiss, Bell and Weintraub claimed that Plaintiff doctored and used to

secure an arrest warrant.  However, Hime herself testified this exhibit and indeed none of

her social accounts had been doctored or altered:

> Q. All right. I want to ask you about C-4. Have you seen this before?
> A. Yes.
> Q. Okay. And this post has -- this is a post -- a screenshot of your Tik Tok account?
>     A. Yes.
> Q. And you posted what's on this picture on Tik Tok?
> A. Yes.
> Q. Has anything been -- on this picture, any of the writing been -- well, let me re-ask that. I apologize. See all the writing on here?
> A. Yes.
> Q. Did you write that?
> A. Yes.
> Q. So nothing has been altered or manipulated?
> A. Nothing altered or manipulated.[26]

---

[25] Transcript March 23, 2022 at pgs. 75-76
[26] *Id* at 193-194

94.    The Trial Judge stated on the record that the "doctored" images were

relevant to the prosecution's harassment charges and forced Plaintiff to defend against

them:

> BY MR. BIRCH:
> Q. Did you have a Tinder account?
> A. Yes.
> Q. When did you have that account?
> A. I don't remember.
> Q. Thank you.
> Did Mrs. Spone ever manipulate anything to make you look nude?[27]
> ***
> THE COURT: It's potentially relevant to whether or not this young
> woman was the subject of harassment.[28]

95.    At trial, ADA Wilkins acting on Weintraub "orders" used the same

fabricated "deepfake" vaping video that Reiss and Bell swore was deepfaked, and which

Weintraub told the entire news world from the BBC to the Hindustan Times in India[29]

was Plaintiff's handiwork, to convict.  Below is an example of the exchange between

Wilkins and Jennifer Hime:

> Q. -- what did you do in response to all of that?
> A. So I called the gym and I told them of Madi's response. That she said:
> This isn't me vaping in this video. This isn't -- this isn't me. You know,
> I didn't do it.[30]

96.    This caused Plaintiff to defend at trial against the frivolous deepfake

allegations:

> ***
> BY MR. BIRCH:
> Q. I'm showing you C-5.
> A. Okay.
> Q. Has that been manipulated?

---

[27] *Id* at 197
[28] *Id* at 200
[29] https://www.hindustantimes.com/world-news/cheerleaders-mom-accused-of-making-deepfakes-of-rivals-101615821019711.html
[30] Transcript March 23, 2022 pg. 21

A. I don't think so.
Q. Okay.
A. Not that I know of.
Q. Thank you. And the other one, the exhibit with the traffic cone, was that manipulated?
A. No.
***
MR. BIRCH: The Commonwealth is just not introducing text messages. They're
introducing these pictures, the social media accounts, as part of their exhibits. I
believe I have an absolute right to cross examine on them.
THE COURT: You do.
MR. BIRCH: That is what Ms. Hime -- and that's why Mrs. Spone was arrested. Part of the charges was the doctored images. I just want to make sure that she's saying these are not doctored.
THE COURT: All right. And I'm allowing you to do that.
MR. BIRCH: Understood.
***
BY MR. BIRCH:
Q. It also says that the video which was what was on C-1, that was your daughter vaping. Right? You said that that was a faked image. That was a faked video. Correct? That that was not your daughter in that.
A. Correct.
Q. Okay. And to this day as you sit here and testify, do you still think that?
A. Yes.[31]

97.    ADA Wilkins used Commonwealth's Exhibit C-6, which Reiss, Bell and

Weintraub had sworn to and stated was manipulated in their affidavits of probable cause,

to prove harassment of Kayla Ratel.  This caused Plaintiff to defend against these false

manipulation allegations:

Q. All right. And what you were shown in the Commonwealth's Exhibit 6 was the actual post that your daughter posted on Tik Tok.
A. Yes.
Q. And nothing on these exhibits have been manipulated or altered in any manner?
A. No.
Q. Okay. And, in fact, your daughter was using the Tik Tok screen name of attentionwh0re69.
Q. Everything on C-6 was what your daughter posted, correct?
A. Correct.

---
[31] Transcript March 23, 2023 at pgs. 102-106.

Q. All right. And the Tik Tok account was not a private account, it was a
public account.
A. Correct.[32]

98.     Bell not only was complicit in the fabrication of the evidence, but he also

knowingly assisted ADA Wilkins at Plaintiff's trial to commit *Brady* violations in their

zeal to have Plaintiff prosecuted.  Bell, who held the title "detective", testified that he

never even bothered to see the most basic of the so-called evidence, *to wit*,  that Plaintiff

had sent threats to these "minors", and had no concern that evidence was being deleted:

Q. Did you know about what I just said specifically, the threats, the voice
messages, the text messages?
A. Yes.
•••
Q. So if a mom calls you and says that my under-aged daughter has been
the subject of threats and voice messages, altered social media accounts,
right, and then a fake video -- somebody making a fake video about her,
that wouldn't concern you, sir? It wouldn't concern you to the extent that,
you know what, I better get out there and I
better see this and I better make sure that that device is copied to be able to
preserve this?
MS. WILKINS: Objection, Your Honor.
THE COURT: The objection is overruled. You may ask the question.
MR. BIRCH: Thank you.
A. Number one, the complaint was that --
Q. Sir, don't try to recharacterize what I asked you. Let me ask you this,
and I'll ask it again, because I remember what I asked you. If a mother
calls you and says that her under-aged daughter has been the subject of
threats and voice messages -- let's start with voice messages. To me, that's
the easiest thing that you could prove. You don't want to inconvenience
the mom, ma'am, you got your phone, hold it up to the phone so I can
hear it. Right? Would you agree that's the easiest way to be able to
determine that someone actually left threatening voice messages?
A. Yes.
*Q.* And you didn't do that?
A. As Madi Hime testified, she had deleted them when they came in.
Q. Let me ask you this and I'll move on. The fact that Jennifer Hime told
you that Madi had already deleted the texts and the voice messages, did
that cause you
any concern?

---

[32] Transcript March 23, 2022 at 230-231

Q. No. [33]

99.     Incredibly, Weintraub and Bell knew that Hime had deleted evidence from

<u>day one</u> of Plaintiff's arrest and never disclosed this to the defense:

> Q. Sir, isn't it true that you weren't told that, you, sir, specifically, that
> those voice messages and texts were deleted until July 8, 2021, when, in
> fact, you
> brought Jennifer Hime in?
> A. No, my officers relayed that to me from the beginning.
> ***
> Q. You know that Mrs. Spone had been charged with sending these social
> media accounts. You know that in the affidavit of probable cause at that
> time there still
> was -- written in the affidavit of probable cause that her social media
> accounts, Madi's, had been doctored, right, altered, right? So you knew
> that at that time when you brought Jennifer Hime in. Right?
> A. I knew what was written in the probable cause affidavit.[34]
> Q. And you have found no communications of any sort on that device to
> any minors, to Madi, Kayla or Bella.
> A. Right? [35]

100.    Bell's arrogance as to his obligations to ensure to preserve the most basic

evidence or to ensure that false evidence was not used against Plaintiff was staggering.

Bell knew that the Plaintiff was demanding the proof from the date of Plaintiff's arrest

and Bell along with Weintraub knowingly concealed material, exculpatory evidence. Bell

also testified he found no evidence that Plaintiff altered any video[36] and confirmed that he

never even asked Kayla or the other minor to see their phones because, according to

Bell's sworn testimony,  he did not want to inconvenience them.

101.    Although Weintraub and Bell also knew that the affidavit of probable

cause stated that Plaintiff sent the threats, nudes and videos directly to minors, ADA

---

[33] Transcript March 24, 2023 at pgs. 89-94
[34] *Id*. at 93-94
[35] Transcript March 24, 2023 at pgs. 91-96
[36] *Id* at 95-96

Wilkins permitted Bell to outright lie on the stand when he claimed he withdrew those

charges **when in fact he never did**:

> Q. But at the time in the affidavit of probable cause, it does suggest, does
> it not, that there's communications with the three minors, namely [one
> minor's name withheld], Kayla, and Madi?
>       ***
> BY MR. BIRCH:
> Q. So you knew Mrs. Spone was being accused of communicating directly
> with three girls. Right?
> A. I didn't see that before it was filed.
> Q. You've never seen that?
> A. I said I did not see this before it was filed.
> Q. I didn't hear the filed part.
> A. I did not see this before it was filed.
> Q. Did you see it after it was filed?
> A. I've seen it since, yes.
> Q. Did you ever say, let me correct that, this is wrong, there's no
> communications to the juveniles?
> A. Not until after the preliminary hearing.[37]

102.    Bell testified that he wanted the "truth", but he had no intention of being

truthful.  At trial, Bell used deleted evidence against Plaintiff that he had in his

possession and failed to turn over and disclose its deletion to Plaintiff with Weintraub's

knowledge:

> Q. And as a police officer, you don't want to be partial that you only want
> to take one person's side, you want to have a complete investigation to
> make sure you have all the facts. Right?
> A. Yes, sir.
> Q. All the facts and nothing but the facts?
> A. Yes.
> Q. So your testimony is the fact that you testified in court that the account,
> the 420 Gucci Gang account that you were using, sir, as the
> Commonwealth
> exhibits, had been deleted, and that didn't cause you any concern?
> A. We didn't use the 420 Gucci Gang accounts. We used exhibits which
> shows screenshots from text messages that has nothing to do with the
> actual Tik Tok accounts.

---

[37] Transcript March 24, 2022 at pgs. 100-101

Q. Did I not see pictures and images up here? You didn't just put up text messages, that's not what you put up here, sir. You also put up images, and I'll put it up for you.

A. They are screenshots of the Tik Tok account. They're not the actual Tik Tok account.[38]

## COUNT I
## PLAINTIFF v. MATTHEW REISS AND LOUIS BELL
## 42 U.S.C. 1983-MALICIOUS PROSECUTION AND FALSE ARREST IN VIOLATION OF THE 4th AMENDMENT

103.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

104.    A claim for false arrest under Section 1983 originates from the Fourth Amendment guarantee against unreasonable seizures. *See Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995); *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir. 2000) (Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.") (quotations and citations omitted).

105.    When arrested pursuant to a warrant, "a plaintiff may succeed in a §1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.' " *Wilson v. Russo,* 212 F.3d

---

[38] *Id*. at 107-108

781, 786–87 (3d Cir.2000) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d

Cir.1997)) (footnote omitted).

106.    To determine whether probable cause exists for an arrest, courts must

apply an objective standard based on " 'the facts available to the officers at the moment

of arrest.' " *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994) (quoting *Beck*

*v. Ohio*, 379 U.S. 89, 96 (1964)).

107.    For a claim of malicious prosecution under § 1983, (1) the defendant

initiated a criminal proceeding; (2) he did so without probable cause; (3) the proceeding

ended in plaintiff's favor; (4) the defendant acted maliciously or for a purpose other than

bringing the plaintiff to justice; and (5) as a consequence of a proceeding, the plaintiff

suffered a deprivation of liberty consistent with the concept of seizure. *Johnson v.*

*Knorr,* 477 F.3d 75, 81–82 (3d Cir.2007). All such elements are present.

108.    Defendants Reiss and Bell, acting within the course and scope of their

employment, under the color of state law, and pursuant to the customs, policies, and

practices of Hilltown Township and the County of Bucks, intentionally and maliciously

initiated a criminal process against the Plaintiff, specifically, by filing a Criminal

Complaint against her and charging the Plaintiff with Cyber Harassment of a Child.

109.    The Criminal Complaint charged Plaintiff with Cyber Harassment of a

Child.

110.    Reiss and Bell completely manufactured the Cyber Harassment charges by

falsely swearing under penalties of perjury that Plaintiff "deepfaked" videos of the

minors, altered social media accounts of the minors to make them appear nude, and

directly sent threats to the minors. None of this evidence existed, and Reiss and Bell knew this to be the case.

111.    Moreover, Reiss and Bell falsely swore that Kayla was a minor covered under the purview of the Cyber Harassment charge, even though Kayla was an adult.

112.    Reiss and Bell knew that no such evidence of the above existed when they falsely swore in the affidavit of probable cause and charged Plaintiff with Cyber Harassment of a Child, as admitted by Bell at trial.

113.    No probable cause existed to file the criminal charges against the Plaintiff and to arrest her for the crime of Cyber Harassment, nor did Reiss and Bell possess a reasonable belief that probable cause existed.

114.    Defendants Reiss and Bell initiated the criminal proceedings and maliciously continued the proceedings against the Plaintiff, without probable cause.

115.    The criminal proceedings against Plaintiff continued on the Cyber Harassment charges for more than one year, even after evidence presented at the Preliminary Hearing unequivocally established that no basis existed to charge and prosecute Plaintiff for the crime of Cyber Harassment.

116.    At Plaintiff's Preliminary Hearing, Bell falsely presented evidence that Plaintiff was cyberharrassing the minors by repeating the same false averments to the District Justice, showing phone records that did not belong to Plaintiff, and testifying that Plaintiff made the deepfakes, nudes and altered social media accounts of the minor.

Below is the false Affidavit presented at the Preliminary Hearing:

| Commonwealth of Pennsylvania | | AFFIDAVIT OF PROBABLE CAUSE |
|---|---|---|
| COUNTY OF BUCKS | | |
| Docket Number (Issuing Authority): MD- 2370-2020 | Police Incident Number: 36-20-04427 | Warrant Control Number: 36-20-0035 |
| PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES: | | |

The facts of this investigation were gathered by your affiant, Officer Christopher Ferry, and Detective Louis Bell, all of which are currently employed by the Hilltown Township Police Department and have all been with this department for over 17 years. On July 8, 2020, Officer Ferry spoke with Jennifer Hime. She stated that her juvenile daughter, M.H., has been cyber bullied for about the past month. Specifically, she stated that her daughter has been getting phone calls and text messages from a blocked or unknown number with many of the texts and voice messages saying "you should kill yourself." Also, pictures from M.H.'s social media accounts have been taken and doctored to appear as though she is nude, drinking alcohol or vaping. An altered video of M.H. was sent via text to the owner of a cheer gym in Doylestown. M.H. is a cheerleader at that gym. The altered video showed M.H. vaping which could have resulted in her being dismissed from the cheer team. The number that sent the doctored video to the cheer coach was 267-529-6540. When called, a message says that the number is no longer available. Mrs. Hime then provided copies of the messages to this department that showed messages from that specific number was received on July 6th. Your affiant reviewed the video and found it to be the work of a program that is or is similar to "Deep Fakes", where a still image can be mapped onto an existing video and alter the appearance of the person in the video to show the likeness of the victim's image instead. On July 9, 2020 Detective Bell did an internet search of the phone number showed that the carrier listed was Bandwidth.com. Bandwidth.com redistributes phone numbers to other Voice over internet protocol (VoIP) wholesale businesses who provide the numbers to customers. An email was sent to uslawenforcement@bandwidth.com and requesting the information of the wholesaler who was assigned the phone number of 267-529-6540.

117.    Bell knew that there was no evidence of the above and **he maliciously and falsely testified to the above** at the Preliminary Hearing. The Plaintiff was, and is, actually innocent of the crime of Cyber Harassment of a Child with which she was charged and maliciously prosecuted.

118.    The prosecution *nolle prossed* the Cyber Harassment charges against Plaintiff on the first day of trial in the Court of Common Pleas because Weintraub, Bell and Reiss knew no evidence existed to support the allegations of Cyberharassment for which he initiated Plaintiff's arrest, and Bell knew that he would further perjure himself.

119.    At the time Reiss and Bell falsely swore to these outlandish allegations in the affidavits of probable cause, they knew that no such evidence existed.

120.    Reiss and Bell failed to investigate the statements of the complaining witnesses, and instead regurgitated their lies in the affidavits of probable cause issued against Plaintiff.

121.    Reiss and Bell failed to properly collect all evidence of the alleged "deepfakes" and altered images, which includes failing to confiscate the phones of the complaining witnesses or to preserve the digital records of Plaintiff's alleged social media activity.

122.    Reiss and Bell collected no tangible evidence that Plaintiff had created or disseminated false, altered or "deepfake" images of the complaining witnesses – either directly, or through online and social media outlets.

123.    Neither Reiss nor Bell had any training in deepfake technology or had any video (or other content) analyzed by an expert.  None of these defendants had first hand knowledge in observing the alleged deepfaked videos, nudes of minors or threats, nor did they ever have probable cause to charge Plaintiff with these crimes. None of these defendants bothered to investigate before charging Plaintiff with Cyber Harassment. Instead, they accepted and adopted the lies of the complaining witnesses without investigation – failing to collect any of the tangible evidence that allegedly existed of the purported crimes.  Any minimal investigative efforts would have revealed from the outset that this evidence did not exist.

124.    The Fourth Amendment requires that arrest warrants be based "upon probable cause, supported by Oath or affirmation". This Fourth Amendment right is violated when materially false statements and omissions of fact are made in an affidavit supporting an application for an arrest warrant.

125.    Reiss and Bell knew or should have known in the exercise of due care that the probable cause affidavits were false, misleading, and contained material omissions intended to ensure that a Judge would be duped into signing a constitutionally deficient arrest warrant for Plaintiff's arrest.

126.    The affidavits omitted exculpatory evidence in an effort to make the affidavit misleading to the Judge and facilitate the false arrest and the seizure of Plaintiff's assets.

127.    The false statements and omissions were material to a finding of probable cause.

128.    Any reasonable police officer in the shoes of Reiss and Bell would have known that they were violating Plaintiff's clearly-established rights by filing charges and arresting the Plaintiff for Cyber Harassment, which charges and arrest were wholly unsupported by probable cause or even arguable probable cause as no substantiating evidence existed.

129.    As a direct and proximate result of the actions described herein, Plaintiff suffered damages in having to defend against the criminal charges brought as a result of the fraudulent affidavits, suffered lost income, seizure of her property , attorney's fees, mental anguish from her arrest, public humiliation and deprivation of her constitutional rights.

WHEREFORE, Raffaella Spone demands judgment against Matthew Reiss and Louis Bell for damages in excess of  Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

## COUNT II
## PLAINTIFF v. MATTHEW REISS, LOUIS BELL AND MATTHEW WEINTRAUB
## 42 U.S.C. 1983-VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE 14th AMENDMENT

130.    Plaintiff  incorporates the above paragraphs by reference as if set forth herein.

131.    "[T]he Fourteenth Amendment protects against unlawful seizures 'through and after trial.'" *Mervilus v. Union Cnty.*, 73 F.4th 185, 194 (3d Cir. 2023) (quoting *Halsey*, 750 F.3d at 291).

132.    To survive a motion to dismiss on a fabricated evidence claim, the plaintiff's complaint must include well-pleaded allegations of the following:

> [The defendant was] aware that evidence is incorrect or that [it was] offered in bad faith." *Black*, 835 F.3d at 372 (quoting *Halsey*, 750 F.3d at 295 (internal quotation marks omitted)). Evidence is not fabricated if it "is incorrect or simply disputed." *Halsey*, 750 F.3d. at 295. Were it otherwise, every acquittal could spawn a fabrication claim. Because this intent requirement is stringent, "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence." *Id*.

*Id*.

133.    The "bad faith" requirement "[o]bviously … encompasses the knowing or willful submission of false evidence."  *Id*.  The Third Court in *Mervilus*, however, clarified that "bad faith" may also be established with proof of recklessness.  *Id*

> An individual **who furnishes inculpatory evidence while consciously disregarding a substantial risk it is false behaves culpably**, heightens the risk of a wrongful conviction, and "offends some principle of justice so rooted in the traditions and conscience of our people to be ranked as fundamental." *Medina v. California*, 505 U.S. 437, 446, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (cleaned up).

*Id.* (emphasis added).

134.    Therefore, for a fabricated evidence claim, a §1983 plaintiff must allege facts that defendant "formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Id*. at 194-195.

135.    Reiss, Bell and Weintraub intentionally and/or recklessly introduced fabricated evidence at trial to prosecute Plaintiff for Harassment of a Child, even after they made the decision to *nolle process* those charges before the commencement of trial – that is, they voluntarily dismissed the Cyber Harassment charge but continued to use the false and fabricated evidence at trial of this dismissed charge during trial.

136.    In addition to introducing fabricated evidence of the *nolle prossed* Cyber Harassment charge, Reiss, Bell and Weintraub allowed evidence to be destroyed, engaged in a conscious effort to suppress exculpatory evidence, participated in numerous *Brady* violations – while actively seeking to introduce evidence (a) that was patently untrue, and (b) that was exclusively probative of charge that had been *nolle prossed* (and should not have been part of the trial).

137.    Specifically, while introducing fabricated evidence at trial of a *nolle process* Cyber Harassment charge, these Defendants engaged in the following actions, *inter alia*:

- Concealing that Sherri Ratel disclosed to Weintraub that his statements to the press concerning Plaintiff's alleged creation of "deepfake videos," altering images and the like were false, including that Kayla was not a minor;

40

- Concealing the identity of the actual individual who altered Hime's picture to maker her appear nude and failing to turn over Hime's written statement that she was selling nudes on Tinder;

- Allowing Hime to dispose of her phone and concealing that it was done;

- Representing that a copy of Hime's phone was in fact the original phone on which she told police that she received Plaintiff's threats;

- Refusing to comply with Plaintiff's demands for the evidence, as early as May 14, 2021, that they turn over Hime's original phone so that it could be shown early that the Affidavits of Probable Cause were false and that there never was any evidence of deepfakes, nudes or death threats.

- Concealing that Hime was deleting the same social media accounts that police accused Plaintiff of "altering to make her appear nude, drinking and vaping";

- Concealing that Hime had deleted a *Tik Tok* account known as "madihimepolice";

- refusing to turn over a box of evidence that Jennifer Hime provided to police;

- Concealing that Hime had provided Reiss with the passwords to her private social media accounts;

- Concealing that Jennifer Hime intentionally withheld evidence of the police;

- Concealing that Jennifer Hime texted Sherri Ratel there was information that could hurt Hime

138.    Reiss, Bell and Weintraub concealed the exculpatory evidence in order to ensure the prosecution had the opportunity to introduce fabricated evidence at trial that Plaintiff (i) created "deepfake" videos and altered images of minors and (ii) disseminated those images across social media and other online platforms – **even though the Cyber Harassment charges to which this 'evidence' related had been *nolle prossed*.**

139.    Plaintiff repeatedly requested that Bell and Weintraub's office turn over all evidence of the alleged Cyber Harassment which they refused to do as early as May 17, 2021, Plaintiff demanded all evidence:



140.    ADA Wilkins never complied,[39] although at this point, Hime had already disposed of her phone.  On June 14, 2021, frustrated with the lack of candor, Plaintiff sent a certified letter to Wilkins that demanded the following:

---

[39] ADA Wilkins feigning ignorance of the use of Cellebrite when that device is commonly used by law enforcement was unbelievable.



**Robert J. Birch, Esquire**

465 Commerce Drive        **Attorney At Law**        Ph: 610-277-9700
Fort Washington, PA 19034                            Email:robert@robertbirchlaw.com
                                                     www.robertbirchlaw.com

June 14, 2021

<u>Via Certified Mail, R.R.R.</u>

Julia K. Wilkins, Esquire
Assistant District Attorney
Bucks County District Attorney's Office
100 North Main Street
Doylestown, PA 18901

Re: <u>Commonwealth v. Spone</u>

Dear Ms. Wilkins:

Pursuant to Pa. R. Crim. P 573, I request that you voluntarily produce the following to avoid the necessity of a motion:

1. A copy of what you told Judge McHugh that you sent to Cary Hall
2. A copy of every text message and voice message that was sent by Spone directly to M.H., K.R., and I.N. that stated "you should kill yourself"
3. A copy of every photo of M.H., K.R., and I.N. that was allegedly "doctored" according to D.A. Weintraub, including any social media accounts that were allegedly "doctored"
4. A copy of every "barbie doll like image" that D.A. Weintraub stated that Spone made
5. A copy of all photos that were taken from M.H.'s social media and edited to make it appear that M.H. was drinking, vaping and that her bathing suit was edited and replaced with a skin tone color
6. A copy of the App or Apps used by Spone to "deepfake" any video of M.H.
7. A copy of any statements made by M.H., K.R., and I.N. and/or their respective parents
8. A copy of the bodycam footage of Hilltown and/or New Britain police when the warrant was served on Spon

Sincerely,

Robert J. Birch

141.    ADA Wilkins never complied.  Upon information and belief, Weintraub directed Wilkins to reject the demand from Plaintiff's counsel, and to introduce false or fabricated evidence at trial that related exclusively to charges the District Attorney had decided to *nolle prossed*.

142.    Moreover, this was not the first time that Weintraub's office concealed and suppressed exculpatory evidence in criminal cases.  In particular, his then ADA Wilkins had failed to advise defense counsel of exculpatory evidence in proper cases. For example, in the case of *Commonwealth v. Cuevas*, CP-09-CR-0000983-2023, Bucks

43

County Court of Common Pleas Judge Gilman dismissed certain charges because the Commonwealth engaged in a lack of prosecutorial good faith and due diligence by committing *Brady* violations, and failing to advise defense counsel of exculpatory evidence on the original trial date and then failed to advise of additional exculpatory evidence after the trial date.

143.    Similar to the above concealment tactics, ADA Wilkins concealment of exculpatory, material evidence was not only critical evidence that Plaintiff would have relied upon to defend against the false charges filed against her (which were ultimately *nolle prossed*), the prosecution would have been unable to introduce the false and fabricated evidence of the *nolle prossed* Cyber Harassment charges at trial. Their actions were so significant that they affected the outcome of the case.

144.    Moreover, Reiss, Bell and Weintraub introduced the fabricated evidence of the Cyber Harassment charges – which had already been *nolle prossed* – against Plaintiff at trial which were shown to the jury.  This prejudiced Plaintiff, and was a violation of the due process guarantees at trial to which Plaintiff was entitled.

145.    Bell was complicit in the fabrication as he assisted ADA Wilkins at trial.

146.    The trial transcripts reveal that Weintraub, through ADA Wilkins, and Bell introduced knowingly false and fabricated evidence at trial – that is evidence in the Prosecution's possession for two years, and that Weintraub acknowledged was false when he decided to *nolle pros* the Cyber Harassment charges  on the first day of trial.

147.    Specifically, the prosecution introduced as evidence exhibits and the testimony of witnesses that related to: (i) the erroneous deepfake video of Jennifer

44

Himes; (ii) the supposedly altered nude images of the complaining witnesses; and (iii), the fact that all complaining witnesses were minors.

148.    Even though this evidence did not relate to the charges against Plaintiff that still existed at the time of trial, the prosecution introduced the evidence regardless.  It was prejudicial to Plaintiff and violated her rights to due process.

149.    Bell and ADA Wilkins knew that the evidence was in fact false as sworn to by Sherri Ratel in Exhibit "A".  For example, the Ratel Affidavit states that:

> 29.    During the trial preparation, Bell showed us Kayla's social media accounts that Spone had been accused of manipulating.  We told him that nothing was manipulated.  Sherri had also told Wilkins on March 15, 2021, the day of Weintraub's press conference, the same thing.
>
> 30.    During preparation before Spone's trial, we were together at least once with Jennifer and Madi. Sherri and Kayla again specifically told everyone that all of the images pertaining to Kayla were not falsified.  The police and Wilkins also knew that nothing was sent to Kayla.

See **Exhibit "A"**

150.    At Defendants direction, Hime and her mother presented testimony before the jury that Plaintiff must have manufactured the "deepfake" videos and/or altered pictures of Hime. They testified the images were not in fact Hime.

151.    Reiss, Bell and Weintraub knew the testimony was false as shown by **Exhibit "A",** and which exclusively related to the Cyber Harassment charges, and yet decided to introduce it regardless.  None of this evidence was required in order to convict Plaintiff of the charges that remained.

152.    Even though he had *nollel prossed* the Cyber Harassment charges for lack of evidence, Weintraub introduced at trial the same fabricated "deepfake" vaping video, which Reiss and Bell swore had been deepfaked, and which Weintraub had told the entire news world was Plaintiff's handiwork.  This infected Plaintiff's trial with prejudice.

153.    Reiss, Bell and Weintraub allowed the false and fabricated Cyber Harassment charges to proceed since the phony press conference, through the Preliminary Hearing and up to the day of trial , even though they knew with certainty the allegations were fabricated and untrue.   Prior to trial, Bell threatened Plaintiff that if she mounted a defense, he would 'find' other evidence against her.

154.    The actions of these defendants in their inactions, omissions, cover-ups, deceptions and concealment, obstructive behavior regarding investigations, and the use of knowingly fabricated evidence introduced at trial after the District Attorney's Office *nolle prossed* the Cyber Harassment charges were so egregious and were a violation of the Plaintiff's Fourth and Fourteenth Amendment rights.

155.    As the Third Circuit noted in *Black* [40]"we repeatedly referred to the injury of falsified evidence leading to wrongful initiation of prosecution. *See, e.g.*, 750 F.3d at 289 ("When falsified evidence is used <u>as a basis to initiate the prosecution of a defendant,</u> or is used to convict him, the defendant has been injured...." (emphasis in original)); <u>id.</u> at 294 n.19 ") *Black supra at* 370 (3d Cir. 2016).  Further, the Third Circuit opined "[W]e think it self-evident that a police officer's fabrication and <u>forwarding to prosecutors of</u>

---

[40] *Black v. County of Montgomery*, No. 15-3399 (3d Cir. 2016)

known false evidence works an unacceptable corruption of the truth-seeking function of the trial process." (quotation marks omitted and emphasis added)" *Id.* at 371.

156.    At Plaintiff's trial, the due process guarantees protected by the Fourteenth Amendment broke down.  Weintraub, Reiss, and Bell "corrupt[ed] the truth-seeking function of the trial process" by introducing evidence of a crime that they had *nolle prossed* before the trial began.  In other words, the record indicates that Plaintiff was tried using evidence that the Defendants acknowledged were false and unsubstantiated such that the prosecution had to voluntarily dismiss the Cyber Harassment charges prior to trial.

157.    As a result of the Defendants actions herein, Plaintiff suffered damages for the illegal seizure of her person, the deprivation of her liberty, the corruption of the trial process and the due process guarantee not to be tried using false and fabricated evidence, as well as past, present and future emotional and psychological pain, suffering, and emotional distress, humiliation, stress, fear, anxiety, and embarrassment.

WHEREFORE, Raffaella Spone demands judgment against Matthew Weintraub, Matthew Reiss, and Louis Bell, for damages in excess of  Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

## COUNT III
## VIOLATION OF CIVIL RIGHTS- FALSE STATEMENTS/DEFAMATION
## PLAINTIFF V. MATTHEW J. REISS AND MATTHEW WEINTRAUB

158.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

159.     Defendants Reiss and Weintraub embarked upon a vitriolic public campaign designed to damage the personal reputation of the Plaintiff in violation of the Fourteenth Amendment to the United States Constitution. Defendants either published, or caused to be published, false and defamatory statements about Plaintiff.

160.     Weintraub sent Plaintiff's Criminal Complaint to the media following his press conference.

161.     Weintraub ignored that Sherri Ratel told him his press statements regarding Kayla were false and continued to make the same false allegations regarding Plaintiff to the media.  However, Weintraub escalated his attack on Plaintiff such as making statements to the *Washington Post* that Plaintiff was "slut shaming" children, and that Plaintiff was "preying on innocent children".

162.     Weintraub's false claims to the media further included that Plaintiff took photos from Hime's social media accounts and modified them to show her drinking, vaping, and nude with a bathing suit edited out and replaced with skin tone but "no genitalia showing"; that police reviewed the images and found them to be "deep fakes" "by looking behind the curtain" and using metadata; that Plaintiff captured pictures of the three victims and provided them with offensive labels including falsely stating Kayla was using "AttentionWhore69" as a screen name"; and, that a search warrant at Plaintiff's home determined that she used her call phone to manipulate media and create the "deep fakes," which is the crux of this case." Press Conference at 3:26-6:10.

163.     As a result of Weintraub's defamatory statements, Plaintiff was branded a child predator and as a result, lost her property,  lost her job, and when she attempted to

apply to numerous positions for which she was more than qualified,  she was

immediately rejected as they involved working with children.

164.    Moreover, there is a recognized liberty-property interest in employment.

165.    The U.S. Supreme Court has held, when a prosecutor makes statements to

the media regarding a case or holds a press conference, the prosecutor acts as an ordinary

executive official who deals with the press and not as a prosecutor. See, *Buckley,* 509

U.S. at 277–78 ("Comments to the media have no functional tie to the judicial process

just because they are made by a prosecutor.")

166.    Therefore, Weintraub has no immunity to shield him from his defamatory

remarks to the press.

167.    Weintraub's intent by giving false statements to the press by "parroting"

the criminal complaint without any investigation on his own, and then to editorialize

beyond that complaint, was to create a false picture of Plaintiff to make it appear that she

was a child predator.

168.    Moreover, Weintraub continued the false charges and the false statements

that he made to the press to the day of Plaintiff's trial, and even after the trial, knowing

that the cyberharassment charges were false and *nolle prossed,* Weinraub's website still

published the following:



**BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE**

**Matthew D. Weintraub**
Bucks County District Attorney
100 N. Main Street, 2nd Floor
Doylestown, PA 18901
(215) 348-6344
www.bucksda.org

**CHALFONT WOMAN CHARGED WITH CYBERBULLYING DAUGHTER'S CHEERLEADING RIVALS**

MARCH 15, 2021

169.    As of the date of the filing of the original Complaint in this matter,

Weintraub still published on the internet the original press conference that anyone could watch wherein for 20 minutes he continued to spew the false charges of cyberharassment against Plaintiff and that she made deepfakes, created nudes, and sent threats directly to minors.

170.    In addition to Weintraub, Reiss made false statements to the press.

171.    At all relevant times, Reiss was acting under color of law and within the course of their official duties.

172.    Reiss similarly told the press that Plaintiff deepfaked the video of Hime and led to the press and the pubic to believe that it was Plaintiff that needed to prove her innocence.

173.    Similar to Weintraub, Reiss is not entitled to qualified immunity for his actions and omissions and statements to the media.

174.    This conduct was grossly negligent, and for the most part intentional in nature. Plaintiff sues for all damages associated to that harm for all elements she is entitled to receive.

WHEREFORE, Raffaella Spone demands judgment against Matthew Reiss and Matthew Weintraub for damages in excess of Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

## COUNT IV
## PLAINITFF V. HILLTOWN TOWNSHIP AND THE COUNTY OF BUCKS
## 42 USC§ 1983-*MONELL* CLAIMS

175.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

176. Defendant Hilltown Township is a Township of the Second Class and is governed by a Board of Supervisors ("Board"). The Board has hiring and firing authority over its police, from its Chief down to the rank-and-file officers such as Reiss and Bell.

177. During the events described in this complaint (including, but not limited to, (1) the use of false and/or fabricated evidence to charge, arrest and prosecute Plaintiff without probable cause in violation of the Fourth Amendment, and (2) the introduction of false and/or fabricated evidence of the *nolle prossed* Cyber Harassment charges against Plaintiff at trial in violation of the Fourteenth Amendment), all individual Defendants acted (i) under the color of state law and (ii) pursuant to the direct policy, practice and/or custom of the Hilltown Township and/or Bucks County – most specifically, the Bucks County District Attorney's Office).

178. Specifically, all individual Defendants implemented a policy, practice and/or custom by Bucks County and Hilltown Township of violating procedural due process protections of a criminal defendant in order to secure a conviction: (i) by using false and/or fabricated evidence to charge, arrest and prosecute Plaintiff without probable cause in violation of the Fourth Amendment; and (2) by introducing false and/or fabricated evidence of the *nolle prossed* Cyber Harassment charges against Plaintiff at trial in violation of the Fourteenth Amendment.

179. Alternatively, Defendants Bucks County and Hilltown Township implemented a policy, practice and/or custom that equated to a failure to supervise its employees adequately despite ample notice that such employees were violating the procedural due process guaranteed by the Fourth and Fourteenth Amendments.

180.    Defendant Bucks County knew or should have known that Weintraub's office had a policy of withholding exculpatory evidence and then failed to supervise ADA Wilkins who had no training in deepfake technology to allow her to use the false evidence at trial.

181.    Defendants deprived Plaintiff of her protected due process guarantees under the Fourth and Fourteenth Amendment.

182.    The deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendment has damaged her reputation in the community and her ability to earn a living in her chosen profession and community.

183.    Defendants' policy, practice, and/or custom of violating the procedural due process rights under the Fourth and Fourteenth Amendments – here, specifically in using false and fabricated evidence against Plaintiff to charge and prosecute her, and to introduce such evidence at trial after the Cyber Harassment charge had been *nolle prossed* – is a policy, practice, and/or custom of Bucks County and Hilltown Township that directly causes violations of federally protected rights.

184.    Defendants' knowingly, intentionally, recklessly, and deliberately indifferent conduct was under the color of state law pursuant to an unconstitutional custom, policy and practice and violated Plaintiff's constitutional, civil and other rights – most notably her rights protected by the guarantee of Due Process under the Fourth and Fourteenth Amendment.

185.    Defendant Bucks County and Defendant Hilltown Township has encouraged, tolerated, and/or ratified policies, practices and customs in the District

Attorney's Office and/or the Police Department that cause violations of constitutional rights.

186.    As a result of Defendants' knowingly, intentionally, recklessly and deliberately indifferent concerted conduct under the color of state pursuant to an unconstitutional custom, policy or practice, Plaintiff suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, damage to his reputation and earning capacity, loss of employment opportunities, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

187.    Hilltown Township was on notice of Reiss' past abuses in abridging civil rights, as he has had two civil rights lawsuits in the Eastern District.  Hilltown certainly had notice of Reiss' possession of child pornography and did nothing to remove him from the Plaintiff's case.

188.    Further, knowing that Reiss was raided in April of 2021 and found to possess child pornography, Reiss should have been removed from Plaintiff's case especially since he alleged that Plaintiff had nudes of the alleged minors which police knew there was in fact no such nudes.

189.    An investigation into what nudes Reiss had in his possession should have been made by Hilltown and certainly by Weintraub.

190.    Further, Reiss held himself out as an expert in deepfake technology claiming that he could see with his "naked eye" elements [of the vaping video] that "don't make sense."[41]   Reiss later admitted that he had no such training.   The statement

---

[41] Daily Dot, **A 'deepfake' of a vaping teen is at the center of a harassment case—but what if it's not faked?** 5/3/2021

was clearly false and intended to mislead the public into believing that Reiss was an expert and that Plaintiff had deepfaked the vaping video.

191.    Plaintiff believes and therefore avers that the defendant, Hilltown Township, has adopted and maintained a recognized and accepted policy, custom and/or practice of condoning and/or acquiescing in condoning false arrest and failure to remove and investigate officers charged with child pornography. Said policy, custom and practice, which includes the following, violate the Fourth and Fourteenth Amendments of the Constitution of the United States as well as federal statutory law and Pennsylvania law:

a.    failing to have clear, concise, and appropriate directives to prevent or discourage the use against persons for arrest or detention without probable cause;

b.    failing to discipline its police officers including Reiss and Bell for utter failure to conduct an investigation and participating in creating a national media frenzy against Plaintiff  without probable cause;

c. For allowing Reiss to hold himself out as an expert in deepfake technology when he had no such training;

d.    failing to instruct officers to intervene to prevent the use by another officer or officers of illegal false arrest and the use of false affidavits;

e.    failure to preserve evidence or take any steps to prevent the destruction of important evidence

f.    allowing knowingly false charges to proceed to a trial

192.    Plaintiff believes and therefore avers that the defendant, Hilltown Township, has adopted and maintained for many years, a recognized and accepted policy,

custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including Reiss and Bell, regarding individuals' right to equal protection and to be free from being falsely arrested, which policy and/or custom and/or practice violates the Fourth and Fourteenth Amendment of the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania.

193.    The actions that these police officers have taken against Plaintiff, reflect the policy, practice and/or custom of Hilltown Township and its police officers to permit the fabrication of criminal charges; permit officers to remain in active duty; inadequately investigate charges of nudes or nudity of minors, and/or intentionally ignore charges of misconduct against its officers; allow its officers to prepare false affidavits based on fabricated evidence from private citizens.

194.    Prior to the events described herein, Hilltown Township developed and maintained policies, practices and/or customs exhibiting deliberate indifference to the constitutional rights of persons, which caused the violation of Plaintiff's rights; namely, Hilltown Township did not adequately require appropriate training or re-training of police officers who were known to have engaged in civil rights violations such as Reiss.

195.    The policies, practices and customs of Hilltown set forth above are designed to exonerate police officers involved in the commission of acts of false arrest by Township officials responsible for police oversight.

196.    Hilltown Township has intentionally continued to perpetuate such policies and practices and/or has deliberately failed to eliminate them. The foregoing acts, omissions, systemic deficiencies, practices, customs and deliberate indifference constitute the policies, practices and customs of Hilltown Township and have caused police officers

of the Township, such as Reiss, to violate the constitutional rights of citizens, including Plaintiff.

197.    The violations and injuries suffered by Plaintiff were a foreseeable result of the policies, practices, customs and deliberate indifference of the Hilltown Township.

198.    Hilltown Township's violations of the Fourth Amendment to the Constitution of the United States also constitute violation of Plaintiffs' civil rights under 42 U.S.C. § 1983.

199.    As a direct and proximate result of the actions of  Hilltown Township, Plaintiff also has suffered damages including loss of liberty, and out of pocket expenses including his attorney fees, impairment of her reputation, personal humiliation, mental anguish and suffering.

200.    Moreover, Weintraub, conspiring with Reiss and Bell, knew their conduct was unlawful, but acted maliciously, willfully and knowingly, with specific intent to deprive Plaintiff of her right to be free from malicious prosecution for false cyberharassment charges.

201.    Weintraub knew at least a year before trial that there was no evidence of deepfakes, nudes or threats and he purposefully and intentionally withheld such evidence to further his false narratives to the press.

202.    Weintraub never requested that Reiss be removed the case and simply took Reiss at his word that Plaintiff deepfaked videos, made nudes and sent threats directly to minors.

203.    Defendant the County of Bucks blessed and accepted the outlandish violations and failed to establish adequate policies for training, supervising and

disciplining police and prosecutors, respectively, such that Plaintiff would not have been prosecuted unlawfully for false charges, and/or failed to adequately train, supervise and discipline its officers and prosecutors in violation of Plaintiff's constitutional rights.

WHEREFORE, Raffaella Plaintiff demands judgment against Hilltown Township and the County of Bucks for damages in excess of Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

**COUNT V**
**COMMON LAW DEFAMATION**
**PLAINTIFF V. ALL DEFENDANTS**

204.    Plaintiff incorporates the above paragraphs by reference as if set forth fully at length.

205.    In addition to Reiss and Weintraub's press tours and false statements as described above, Hime and Ratel continued to publish false and malicious statements about the Plaintiff that included, *inter alia:*

- Hime posting a Tik Tok video where a supposed "news anchor" states that Plaintiff created deepfake videos and that she should kill herself

- Hime posting on social media that Plaintiff was "dumb";

- Ratel posting a Tik Tok where she is laughing while scrolling through headlines about Plaintiff creating deepfakes.

- Ratel posting a Tik Tok that had Plaintiff's mugshot and screenshots of the internet headlines that Plaintiff created deepfakes.

- Ratel stating on Tik Tok that she was a victim of Plaintiff.

- Hime posting another Tik Tok under "420guciganng" and talked falsely
  that she was stalked by Plaintiff.

206.    Their respective parents knew that these were posted, knew these to be false and still allowed them to be published.  Moreover, the social media accounts are now marked "private" wherein it is believed additional false statements are being published.

207.    Jennifer Hime made false statements to the press and was (and perhaps still is) in a film deal to falsely publish the cyberharassment allegations against Plaintiff such as the deepfakes.

208.    All of the above statements were false and known to be false when made. The police and district attorney's office concealed the true facts and kept the evidence from Plaintiff until shortly before trial so that these defendants could continue the false narrative that they spewed to the press that Plaintiff was a "frightening cyberbully" and a child predator.

209.    At no time did any of defendants attempt to retract or correct the statements. These statements are now on the internet which can never be retracted.

210.    The false statements have caused Plaintiff to receive death threats, be harassed by neighbors, and for the entire Nation to view her as a person who as Weintraub stated, preys on minor children.

211.    All of the above statements were admitted false at trial as Plaintiff still had to clear her name regarding the cyberharassment.

212.    The statements that Plaintiff made deepfakes, nudes and sent threats were grossly false and constitutes defamation  and Plaintiff is entitled to an award of general and punitive damages.

213.    Plaintiff has suffered from PTSD and is under medical care for severe emotional distress.  Plaintiff will never be able to work in her chosen field again especially with minors.

WHEREFORE, Raffaella Spone demands judgment against Madeline Hime, Matthew Reiss, Louis Bell and Matthew Weintraub, jointly and severally, in excess of Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

**COUNT VI**
**INVASION OF PRIVACY/FALSE LIGHT**
**PLAINTIFF V. ALL DEFENDANTS**

214.    Plaintiff incorporates the above paragraphs by reference as if set forth fully at length.

215.    The actions of Reiss, Weintraub and the Himes violated Plaintiff's right of privacy by placing Plaintiff in a false light before the eyes of others by the false cyberharassment charges, as well as family, friends and the general public.

216.    By such unauthorized publication and false statements given to the press and posting on social media that Plaintiff made deepfakes, nudes and sent threats and

messages that "you should kill yourselves", and posting that Plaintiff stalked and cyberbullied minors, the defendants invaded Plaintiff's right to privacy, subjected Plaintiff to ridicule and contempt, injured Plaintiff's personal esteem, reflected disgracefully on Plaintiff's character, diminished Plaintiff's reputation and good name among her family and friends, and destroyed Plaintiff's peace of mind, and caused severe distress.

217.    The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

WHEREFORE, Raffaella Spone demands judgment against Madeline Hime, Jennifer Hime, Matthew Reiss, Louis Bell and Matthew Weintraub, jointly and severally, in excess of Five Hundred Thousand Dollars ($500,000) plus attorney's fees, costs and expenditures, sums, delay damages, damages, pre-judgment and post- judgment interest, and any further relief as is just and appropriate.

Respectfully submitted:

Dated: May 1, 2025

Robert J. Birch, Esquire
Attorney for Plaintiff
ID. No. 65816
PO Box 1133
North Wales, PA 19454
(610) 277-9700
robert@robertbirchlaw.com

## **CERTIFICATE OF SERVICE**

I, Robert J. Birch, Esquire, hereby certify that on May 1, 2025, I served Plaintiff's

Amended Complaint to all counsel of record via ECF.


_____
ROBERT J. BIRCH